FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

**JUN 2 5 2010**

Stephan Harris, Clerk
Casper

**SUBMITTED BY:**
JEFFREY C. GOSMAN
GOSMAN LAW OFFICE
PO Box 51267
Casper, WY 82601-2481
(307) 265-6715 (fax.)
(307) 265-3082 (ph.)

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| TRICIA WACHSMUTH,<br><br>Plaintiff,<br><br>vs.<br><br>City of Powell, Tim Feathers, Chad Miner,<br>Mike Chretien,Roy Eckerdt, Dave Brown,<br>Mike Hall, Brett Lara, Matt McCaslin,<br>Alan Kent, Matt Danzer, Officer Brilakis,<br>Lee Blackmore, Cody Bradley, Kirk Chapman<br>John Does #1 - #4<br><br>Defendants | CASE NO. **10 cv 041J** |

---

## PLAINTIFF'S MOTION TO SUBMIT FIRST AMENDED COMPLAINT

Comes Now, Plaintiff, by and through counsel Jeff Gosman of GOSMAN LAW OFFICE

and submits his amended complaint pursuant to the Order of the Court entered on the 17th

of May, 2010 which required submission of the contemplated amendment by July 2, 2010.

Friday, June 25, 2010

Respectfully submitted,

JEFFREY C. GOSMAN
Plaintiff's Counsel
**GOSMAN LAW OFFICE**
PO Box 51267
Casper, Wyoming 82601
(307) 265-3082 (ph.)
(307) 265-6715 (fax.)

## *Certificate of Service*

I hereby certify that true and correct copies of the foregoing document was served this Friday, June 25, 2010 by forwarding a copy by *e-submission* to the following parties in interest:

| | |
|---|---|
| Misha Westby | Tom Thompson |
| Senior Assistant Attorney General | MacPerson, Kelly & Thompson |
| 2424 Pioneer Avenue, 2nd Floor | P.O. 999 |
| Cheyenne, WY 82002 | Rawlins, WY 82301-0999 |
| (307) 777-5477 | (307) 324-2713 |
| (307) 777 8920 (f) | (307) 324-7348 |
| mwest@state.wy.us | tthompson@wyomingattorneys.net |

Jeff Gosman

**SUBMITTED BY:**
JEFFREY C. GOSMAN
GOSMAN LAW OFFICE
PO Box 51267
Casper, WY 82601-2481
(307) 265-6715 (fax.)
(307) 265-3082 (ph.)

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| TRICIA WACHSMUTH, | CASE NO. *10-CV-041J* |
| Plaintiff, | |
| vs. | |
| City of Powell, Tim Feathers, Chad Miner, Mike Chretien, Roy Eckerdt. Dave Brown, Mike Hall, Brett Lara, Matt McCaslin, Alan Kent, Matthew Danzer, Officer Brilakis, Lee Blackmore, Cody Bradley, Kirk Chapman John Does #1 - #4 | |
| Defendants | |

### PLAINTIFF'S FIRST AMENDED COMPLAINT

Comes Now, Plaintiff, by and through counsel Jeff Gosman of GOSMAN LAW OFFICE

and files her complaint.

### Preliminary Statement of the Case

1.     This complaint charges excessive force in the execution of a search warrant that

was unreasonable and violated the Fourth Amendment of the United States Constitution.

2.  State law claims for Intentional Infliction of Emotional Distress and violation of the Wyoming Constitution Article 1 § 4 are also included.

### *Jurisdiction and Venue*

2.  The District Court has jurisdiction of the federal claims herein pursuant to 28 U.S.C. §§ 1331, 1337 and 1343.

3.  Plaintiff alleges violations of her rights under 42 USC § 1983.

4.  The District Court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367.

5.  Venue is proper under 28 U.S.C. § 1391. The constitutional deprivations occurred within the State of Wyoming.

6.  The Causes of Action accrued on the 24th of February, 2009.

7.  The Plaintiff filed a Governmental Tort Claim against the Defendants pursuant to Wy. Stat. § 1-39-101 et. seq.

8.  The claim notice met the requirements of Wy. Stat. § 1-39-113. A copy of the government tort claim is attached hereto and incorporated herein by reference as Appendix One.

9.  The claim notice was served by personal delivery to the business office of the City of Powell, the governmental entity responsible for the Powell Police Department on the 23rd day of February, 2010.

10. The claim notice was signed and certified as required by Wyoming Constitution

Article 16, §7 by the Plaintiff Tricia Wachsmuth.

11.    The Governmental entity did not act upon the claim prior to suit.

### Parties

12.    The Plaintiff is a resident of Park County, Wyoming.

13.    The Plaintiff is married to Bret Wachsmuth and was at all relevant times.

14.    The Defendants are all residents of Powell, Wyoming or the surrounding area.

15.    The Defendants are all officers of the Powell Police Department.

16.    The acts alleged to have occurred below all occurred in the City of Powell, Wyoming
       on or about the 24th of February, 2009.

### Facts Common to all Claims

17.    On the 24th of February, Chad Miner, an officer with the Powell Police Department
       met with Lt. Dave Patterson of the Park County Sheriff's Department, Jonathon
       Davis, Deputy County Attorney, and interviewed a confidential informant named
       Joshua Michael Bessler.

18.    Bessler informed Officer Miner, and Lt. Patterson that Defendant Bret and Tricia
       Wachsmuth had two marijuana plants in the basement of their home.

19.    Informant Bessler allegedly informed Officer Miner, and Lt. Patterson that Bret
       Wachsmuth had guns in his home, including loaded handguns.

20.    Informant Bessler allegedly informed Officer Miner, and Lt. Patterson that Bret
       Wachsmuth had been known to carry a 22 caliber Ruger handgun on his person.

21.    This last statement, if made, was untrue and was not independently corroborated.

22.    Neither Plaintiff nor Bret Wachmsuth had prior criminal history.

23.   Neither Plaintiff nor Bret Wachsmuth had any history of violence.

24.   Mr. Bessler had been picked up that same day in possession of methamphetamine by officer Miner.

25.   Mr. Bessler had several outstanding warrants for his arrest at that time.

26.   Mr. Bessler had an extensive criminal history including charges for forgery, larceny by bailee, and filing a false police report.

27.   Mr. Bessler was well known as an unreliable source of information among law enforcement in the Park County area.

28.   The information provided by the informant gave the wrong address for the home to be searched.

29.   Defendant Miner concluded based on his training and experience that persons involved in marijuana grow operations use guns to protect themselves.

30.   Officer Miner had never done a search warrant for a marijuana grow operation before.

31.   Based on information and belief, Officer Miner and Officer Chretien, consulted with and obtained the approval of the Chief of Police for the tactics used in executing the search warrant.

32.   A group of twelve police officers, the SWAT team, was assembled and a plan formed to storm the house in question with multiple breaches of the home by two different teams with a third team to deploy a Noise Flash Distraction Device ("flashbang") through one of the windows in the house.

33. The flashbang device is dangerous because it can start fires, and it can seriously injure occupants in the residence.

34. SWAT teams are designed to provide multiple breaches of a structure using a show of force with automatic weapons, tear gas or distraction devices and are to be deployed in situations where there is objective danger to the officers or the public that would be presented if the officers knocked and announced their presence.

35. SWAT team dynamic entries are entries of last resort.

36. There was no plan for obtaining entry into the home by less intrusive means other than the simultaneous multiple entries called for here to be timed immediately after the phrase "police, search warrant" was announced.

37. Defendant Chretien was charged with forming the plan for entry into the home.

38. Defendant Chretien designed a plan that called for a group consisting of three officers to be placed at the rear of the home who would create a distraction by breaking a window in the home or the window in the back door itself.

39. A primary entry team consisting of six officers, one with a battering ram, and five with long guns, fully automatic weapons, were to announce "police, search warrant" and if the door did not open immediately, the ram was to be used for entry.

40. Two other officers, one with a window rake and one with a flashbang device were to break one of the windows on the side of the home, and deploy the flashbang device.

41. Most, if not all, of the officers involved, including those planning the SWAT entry into

the home had not been certified or formally trained in SWAT tactics or dynamic entry into a residence.

42.   None of the officers involved or their supervisors had ever been certified or formally trained in the deployment of the flashbang.

43.   All of the Defendants were briefed as to the plan, and the warrant was described to them.

44.   Surveillance of the home was conducted before the search by Defendant Blackmore.

45.   Defendant Blackmore, reported to the officers executing the warrant, that an adult male and a male child entered the home, and the adult male was seen leaving the residence, but the child was not seen leaving the residence.

46.   According to Defendant Miner, at approximately 2116 hrs, on the 24th of February, 2009, Defendant Chapman knocked on the front door and announced, "police, search warrant."

47.   The battering ram was used by Defendant Chapman or one of the other Defendants to gain entry to the residence either at the same time as the announcement or immediately thereafter.

48.   There was no time for the Plaintiff to answer her door.

49.   At the same time the battering ram was used to break down the Plaintiff's front door, which was unlocked.

50.   The Defendant McCaslin and Defendant Kent broke the North East bedroom

window with the window rake, and threw the flashbang device into the bedroom.

51. The distraction device was thrown blindly into the room.

52. The device was thrown directly on the bed in the master bedroom and started a fire which destroyed the mattress and the bedding and some clothing, and burned the carpet and the walls as well.

53. The officers at the rear failed to enter the residence from the back door and entered from the front door with their weapons drawn after the initial entry team had entered the home.

54. Chad Miner encountered the Plaintiff sitting on her couch in her pajamas just inside the front door.

55. He held the Plaintiff at gunpoint while the other officers cleared the main floor, and assembled back in the living room.

56. Plaintiff was asked several times if there was anyone else in the home. She responded each time that no one else was present.

57. Plaintiff was ordered to lead the officers into the basement. The officers assembled behind her.

58. The Plaintiff was forced down the stairs while the officers followed her with their weapons pointed at her back using her as a shield.

59. At one point, Plaintiff traumatized by the incident, stopped on the stairs and leaned back against the wall and was pushed forward by Officer Chretien while he pointed his rifle at her head.

60.   When Plaintiff stopped on the stairs each of the officers behind her shouldered their
      weapons and aimed them at her head.

61.   When Plaintiff arrived at the bottom of the stairs the officers fanned out to search
      the basement.

62.   Plaintiff was then handcuffed, and taken to the police station.

63.   After the residence was secured, it was searched by Defendants Miner, Chretien,
      Hall, Lara, Brown, Chapman, and McCaslin.

64.   The parties conducting the search broke the front door in the home, broke the
      window through which the distraction device was thrown, tore blinds and drapes
      from that and other windows, burned the walls, carpet, Plaintiff's mattress and
      bedding with the flashbang device, caused smoke damage to the home, threw
      family pictures on the floor breaking the frames, kicked in heating vents, kicked in
      the unlocked bathroom door, damaged flooring and baseboard in the home.

65.   The guns taken from the home were damaged by the officers.

66.   Two marijuana plants were seized in connection with the growing operation.

67.   A small amount of marijuana, prescription medication that belonged to Bret
      Wachsmuth under valid prescription, and drug paraphernalia was recovered at the
      home.

68.   There was no evidence that the Plaintiff or her husband were involved in selling
      drugs.

69. The Plaintiff was offered a deferred prosecution for misdemeanor possession of marijuana, which was dismissed.

70. After the home had been searched, witnesses observed the officers standing in front of the Plaintiff's residence taking pictures of each other brandishing their weapons and making victory hand signals.

71. Defendant Hall was involved in the planning and execution of the search warrant and was physically present in the plaintiff's home.

72. Defendant Lara was involved in the planning and execution of the search warrant and was physically present in the plaintiff's home.

73. Defendant Brown was involved in the planning and execution of the search warrant and was physically present in the plaintiff's home.

74. Defendant Eckerdt was involved in the planning and execution of the search warrant and was physically present in the plaintiff's home.

75. Defendant McCaslin was involved in the planning and execution of the search warrant and was physically present in the plaintiff's home.

76. Defendant Danzer was involved in the planning and execution of the search warrant and was physically present in the plaintiff's home.

77. Defendant Brilakis was involved in the planning and execution of the search warrant and was physically present in the plaintiff's home.

78. Defendant Blackmore was involved in the planning and execution of the search

warrant and was physically present in the plaintiff's home.

79. Defendant Bradley was involved in the planning and execution of the search warrant and was physically present in the plaintiff's home.

80. Defendant Kent was involved in the planning and execution of the search warrant and was physically present in the plaintiff's home.

81. Defendant Chretien was involved in the planning and execution of the search warrant and was physically present in the plaintiff's home.

82. Defendant Miner was involved in the planning and execution of the search warrant and was physically present in the plaintiff's home.

83. Defendant Chapman was involved in the planning and execution of the search warrant and was physically present in the plaintiff's home.

84. Defendant John Does 1-4 were involved in the planning and execution of the search warrant and were physically present in the plaintiff's home.

85. The Plaintiff feared for her life and was traumatized by the conduct of the officers during the course of the search.

86. The Plaintiff continues to suffer emotional distress following the search of her home.

87. The damage to the home was unnecessary.

88. The actions of the Defendants in executing a misdemeanor search warrant with a SWAT team, where neither suspect had a prior criminal history or history of violence, deployment of a flashbang device, violation of the knock and announce

rule, and use of the Plaintiff as a human shield were outrageous, motivated by ill will toward the Wachsmuth family, and violated clearly established federal rights.

## Count I. Violation of Plaintiff's Constitutional Right to be Free of Unreasonable Search and Seizure Pursuant to the Fourth Amendment in the Use of the SWAT Team.

Plaintiff states as her first cause of action against the Defendants as follows:

89.    Plaintiff incorporates each allegation contained herein above and herein below into Count I of her complaint.

90.    During the search of the Plaintiff's residence, the Plaintiff was seized by the officers when she was held at gunpoint, handcuffed and taken to the Powell Police Department.

91.    The marijuana grow operation involved two plants, and there was no evidence of any prior distribution of drugs by the Plaintiff or her husband.

92.    The plants had been growing for several months and would have been difficult to dispose of quickly.

93.    There was no reason to suspect any other adults, particularly those with criminal histories were present at the residence.

94.    References in Defendant Miner's affidavit that the confidential informant, Bessler, informed Miner that Defendant carried a loaded weapon constituted a conclusory

statement from a source known for his unreliability.

95. There was no independent corroboration of this information.

96. Most, if not all, of the SWAT team members had not been formally trained to conduct dynamic entries of the kind involved in this case.

97. None of the SWAT team members had been formally trained in the use of the flashbang device.

98. This lack of training was known to the Chief of Police, Tim Feathers who approved the decision to utilize a dynamic entry with a team of untrained officers acting in the capacity of a SWAT team against a local couple suspected of growing marijuana for their own use.

99. The informant provided the wrong address for the search and it was only discovered a short time before the warrant was executed.

100. All of the Defendants participated in the planning of the SWAT entry and were aware of the plan.

101. All of the Defendants knew of the contemplated deployment of the flashbang and they were aware that it was being deployed in a home where a young child was suspected as being present.

102. All of the Defendants knew that officer's MacCaslin and Kent did not have any formal training in the use of the flashbang device.

103. All of the Defendants knew that most, if not all, of the officers involved had no

formal training in the execution of a dynamic entry by a SWAT team.

104. All of the Defendants knew that there were no guidelines or protocols developed prior to the entry to ensure the safety of the occupants, for deployment of the flashbang, for use of drawn weapons, of the requirements for knocking and announcing the warrant before forced entry into the premises.

105. Each of the Defendants failed to prevent the deployment of the SWAT team or object to its deployment under the circumstances.

106. Those charged with planning and executing the search warrant violated the Plaintiff's constitutional right to be protected from unreasonable search and seizure under the Fourth Amendment.

107. The actions of the officers and the chief of police who ratified the plan constituted evil motive or intent, or involved reckless or callous indifference to the federally protected rights of the Plaintiff.

108. The actions of the officers violated clearly established constitutional principles requiring that the deployment of the SWAT team balance the interests of the individual to peaceful possession of his/her home against the interests of law enforcement to protect themselves and the public, where, there was no objective evidence of danger to the officers, the public or the occupants of the home.

## *Count II. Use of the Flashbang Device Constituted Excessive Force and Violated Plaintiff's Fourth Amendment Right to be Free from Unreasonable Search and*

### Seizure.

Plaintiff incorporates each allegation contained herein above and for her cause of action under Count II states and alleges as follows:

109. None of the Defendant officers had sufficient training in the deployment of the flashbang device.

110. Neither McCaslin nor Kent were in a position to view the area where the flashbang device would be deployed.

111. The device landed on the Plaintiff's bed and started a fire.

112. The Defendants McCaslin and Kent were aware that a young child had been seen entering into the premises, and had not been seen leaving the premises after the property was placed under surveillance.

113. The Defendants MacCaslin and Kent could not see in the window in question because the window was covered with blinds and drapery that were both closed.

114. It was a reckless disregard for the safety of the small child believed to be on the premises, to deploy a flashbang device without knowing where the device was being thrown.

115. The use of a flashbang device thrown blindly into the Plaintiff's residence was unreasonable under the totality of the circumstances where the warrant was a daytime warrant for the seizure of two marijuana plants where there was no objective danger either to the officers or to the residents of the home.

116. Chief Feathers and all others in a supervisory capacity who planned the attack on the Plaintiff's residence knew or should have known that use of such a device was unnecessary under the circumstances.

117. Chief Feathers and all others in a supervisory capacity who planned the attack on the Plaintiff's residence knew or should have known officers McCaslin and Kent were untrained in the use of the flashbang device.

118. Chief Feathers and all others in a supervisory capacity who planned the attack on the Plaintiff's residence failed to plan for the use of the flashbang device in accordance with proper standards for such device.

119. Chief Feathers and all others in a supervisory capacity who planned the attack on the Plaintiff's residence failed to ensure that the officers charged with deploying the device took proper safety precautions for the occupants of the residence.

120. All of the Defendants participated in the planning of the SWAT entry and were aware of the plan.

121. All of the Defendants knew of the deployment of the flashbang and were aware that it was being deployed in a home where a young child was suspected as being present.

122. All of the Defendants knew that officer's MacCaslin and Kent did not have any formal training in the use of the flashbang device.

123. All of the Defendants knew the circumstances surrounding the warrant as set out

above and knew there was no basis for the deployment of a dangerous device in execution of a misdemeanor search warrant where there was no objective danger to the officers or to the occupants of the home.

124. Each of the Defendants failed to prevent the deployment of the flashbang device or intervene to insure said device did not harm occupants of the home.

125. The actions of the officers and the chief of police who ratified the plan constituted evil motive or intent or involved reckless or callous indifference to the federally protected rights of the Plaintiff.

126. The actions of the officers violated clearly established constitutional principles requiring that the deployment of a flashbang device be accompanied by a showing that there was a clear objective danger to the officers, the public or the occupants of the home.

127. The actions of the officers violated clearly established constitutional principles when the flashbang device was detonated in a home where small children were believed to be present without any precautions for their safety and where no exigent circumstances existed.

## Count III. Use of Excessive Force in Using Plaintiff as a Human Shield

Plaintiff incorporates each allegation contained herein above and for her cause of action under Count III states and alleges as follows:

128. None of the Defendant officers had sufficient training in SWAT team deployment.

129. Defendant Miner entered the residence with a battering ram after failing to knock and announce, or after failing to allow a reasonable time for the Plaintiff to get off the couch in the front room where she was situated and answer the door approximately five feet away.

130. Defendant Miner then pointed his weapon at the Plaintiff and kept it there while the other officers cleared the home.

131. After the main floor of the home was cleared, the officers regrouped to enter the basement.

132. At that time, all of the officers pointed their weapons, including the long guns or rifles at the Plaintiff and forced her at gunpoint down the stairs where she was employed as a human shield.

133. The use of the Plaintiff as a human shield was objectively unreasonable and violated the Plaintiff's Fourth Amendment rights.

134. The Plaintiff understands that all the officers involved in the search were present and had drawn weapons trained on the Plaintiff as they descended the stairs to the basement.

135. Chief Feathers and all others in a supervisory capacity who planned the attack on the Plaintiff's residence knew or should have known that the officers who pointed their weapons at Plaintiff did not have sufficient training to carry out this SWAT search.

136. Chief Feathers and all others in a supervisory capacity who planned the attack on the Plaintiff's residence knew or should have known that the officers who pointed their weapons at Plaintiff did not have sufficient knowledge of the proper use of their weapons in a SWAT search to prevent the use of the Plaintiff as a human shield.

137. All of the Defendants participated in the planning of the SWAT entry and were aware of the plan.

138. Any Defendant present at the scene, who did not draw his weapon, point it at the Plaintiff and use her as a human shield was present at the scene and aware that this constitutionally unreasonable conduct was occurring.

139. Each of the Defendants, who were present on the scene, and who did not actively participate in the use of the Plaintiff as a human shield nevertheless failed to prevent this action from occurring and are liable to Plaintiff for this failure.

140. The actions of the officers who were involved in the use of the Plaintiff as a human shield constituted reckless or callous indifference to the federally protected rights of the Plaintiff.

141. The actions of the Defendant Miner were motived by retribution and ill-will toward the Plaintiff and constituted reckless or callous indifference to the federally protected rights of the Plaintiff.

142. The actions of the officers violated clearly established constitutional principles that the officers not use unreasonable force in the execution of a search warrant.

## Count IV. Use of Excessive Force by Officer Miner in Keeping the Plaintiff at
## Gunpoint During the Search of the Premises

Plaintiff incorporates each allegation contained herein above and for her cause of action under Count IV states and alleges as follows:

143. Defendant Miner held the Plaintiff at gunpoint from the time he entered the residence and put down the battering ram until the Plaintiff was handcuffed in the basement after being taken downstairs.

144. The period of time elapsed during which Defendant Miner had his weapon trained on the Plaintiff was in excess of ten minutes.

145. During this period of time, Defendant Miner failed to handcuff the Plaintiff.

146. Officer Miner should have handcuffed the Plaintiff as soon as he had her under his control upon entering the home.

147. During this period of time, the Plaintiff obviously posed no threat to Officer Miner or to any of the other officers in the home.

148. During this period of time, the Plaintiff fully cooperated with the officers.

149. Considering the severity of the crime at issue, the fact that the suspect posed no immediate threat to the safety of the officers or others, that she was cooperating fully, and was not resisting arrest or attempting to flee there was no objective basis for Defendant Miner to continue to keep his weapon trained on the Plaintiff.

150. Chief Feathers and all others in a supervisory capacity who planned the attack on

the Plaintiff's residence knew or should have known that officer Miner had insufficient training and experience to participate in the SWAT team and they provided him with no guidelines or procedures which would have protected the Plaintiff from this harm.

151. All of the Defendants who participated in the SWAT entry were aware that Officer Miner was holding the Plaintiff at gunpoint for an excessive period of time.

152. Any Defendant present at the scene, who allowed the Defendant Miner to hold the Plaintiff at gunpoint for a period in excess of ten minutes, and who did not prevent this action from occurring are liable to Plaintiff for this failure.

153. The actions of the officers who allowed the Defendant Miner to keep his weapon trained on the Plaintiff for in excess of ten minutes engaged in conduct that constituted reckless or callous indifference to the federally protected rights of the Plaintiff.

154. The actions of the Defendant Miner were motived by ill-will toward the Plaintiff or with reckless or callous indifference to the federally protected rights of the Plaintiff.

155. The actions of the officers violated clearly established constitutional principles that the officers not use unreasonable force in the execution of a search warrant.

### Count V. Use of Excessive Force in Failing to Knock and Announce

Plaintiff incorporates each allegation contained herein above and for her cause of action under Count V states and alleges as follows:

156. The Defendants who executed the search warrant planned for multiple simultaneous entries.

157. The Defendants intended to create a distraction first, by breaking a window at the back of the home by one of three officers assigned to that task, and then to enter the home "immediately" after the officers announced "police, search warrant."

158. The Defendants intended to employ the distraction device at the same time the battering ram was deployed.

159. At the time the officers arrived, the Plaintiff was sitting in her living room on the couch.

160. The picture window in the front room was located directly behind the couch.

161. As the officers arrived, she looked out the window and saw a man, later determined to be one of the officers, crouched on the front porch.

162. As soon as Plaintiff made eye contact with the officer, he immediately rose and rammed the door down without knocking or announcing his presence.

163. At the same time, the Plaintiff heard the flashbang device explode in the bedroom.

164. This plan is inconsistent with a knock and announce rule that requires the officers to knock, announce their purpose, and allow some reasonable period of time for the occupants of the home to answer the door.

165. The lapse of a meaningful period of time before entry into a home with a knock and announce warrant is a clearly established constitutional right in the Tenth Circuit.

166. The search warrant was for a knock and announce entry.

167. There were no exigent circumstances to justify dispensing with the knock and announce rule as established by the U.S. Supreme Court.

168. Chief Feathers and all others in a supervisory capacity who planned the attack on the Plaintiff's residence knew or should have known that the officer Miner had insufficient training and experience to participate in the SWAT team and they provided him with no guidelines or procedures which would have protected the Plaintiff from this harm.

169. All of the Defendants who participated in the SWAT entry were aware that entry to the premises would be gained by an assault on the home by three teams, with two of them entering the residence simultaneously and the third team deploying the flashbang device.

170. Any Defendant present at the scene, who participated in this plan to enter the Plaintiff's premises either with a no knock forced entry or a knock and announce followed immediately by forced entry violated the Plaintiff's Fourth Amendment rights.

171. The actions of the officers who participated in this plan engaged in conduct that constituted reckless or callous indifference to the federally protected rights of the Plaintiff, and was motivated by an evil motive.

172. The actions of the Defendant Miner were motived by ill-will and were conducted with

reckless or callous indifference to the federally protected rights of the Plaintiff.

173.  The actions of the officers violated clearly established constitutional principles that the officers knock and announce their presence and wait a reasonable time before forcing entry into a home.

*Count VI. Liability of Tim Feathers for his Supervisory Role in the Search, His Failure to Properly Supervise the Search and his Failure to Properly Train his Officers.*

Plaintiff incorporates each allegation contained herein above and for her cause of action under Count VI states and alleges as follows:

174.  Chief of Police Tim Feathers had ultimate supervisory control over all officers of the City of Powell.

175.  Tim Feathers was aware of the search warrant and the plan for deployment of the SWAT team in this case.

176.  Tim Feathers was aware that his officers lacked adequate training in the deployment of a SWAT team.

177.  Tim Feathers was aware that the deployment of a SWAT team for a misdemeanor warrant should be accompanied by a showing of exigent circumstances placing the officer's, the public's, or the suspect's lives in danger.

178.  Tim Feathers knew there were no objective dangers associated with the execution of the misdemeanor search warrant in this instance.

179. Tim Feathers knew that his officers were not adequately trained in the deployment of a flashbang device.

180. Tim Feathers knew or should have known that deployment of a flashbang device to effect a misdemeanor warrant where there was no objective danger to the officers, the suspect or to the public was a constitutional violation.

181. Tim Feathers took no steps to ensure that the execution of the search warrant by the SWAT team which planned a no-knock entry with multiple breaches of the home, deployment of a flashbang device and the presence of twelve officers, five of whom had fully automatic rifles, was likely to produce a constitutional violation without some specific ground rules for the engagement designed to protect the constitutional rights of the Plaintiff.

182. Other than Defendant Chretien's planning effort, no such rules for the use of the SWAT team existed.

183. The actions of Defendant Feathers in approving the execution of the search warrant as planned were conducted with reckless or callous indifference to the federally protected rights of the Plaintiff.

184. Approval of the plan under the circumstances set out above in light of this knowledge showed reckless or callous indifference to the federally protected rights of the Plaintiff.

185. The actions of the officers violated clearly established constitutional principles as

set out above.

## Count VII.  Liability of the City of Powell for Reckless Indifference to the Fourth
## Amendment Rights of the Plaintiff in the Context of the Official Actions of the
## Chief of Police in Approving the Plan for Execution of the Search Warrant

Plaintiff incorporates each allegation contained herein above and for her cause of action under Count VII states and alleges as follows:

186.   The Chief of Police, Tim Feathers, is the official charged with final decision making authority for the Powell Police Department.

187.   The Chief of Police acted in such capacity when he approved the plan to carry out the search warrant as described above.

188.   Tim Feathers approved the plan to execute a misdemeanor search warrant where there was no objective evidence of danger to the officers, or the public knowing that no one on the police force was properly trained to deploy the flashbang.

189.   Tim Feathers approved the plan to execute a misdemeanor search warrant where there was no objective evidence of danger to the officers, or the public knowing that, most, if not all the officers involved in the SWAT team were untrained.

190.   Tim Feathers approved the plan to execute a misdemeanor search warrant where there was no objective evidence of danger to the officers, or the public knowing that there were no procedures or policies in place to govern the conduct of the officers.

191.   The actions of Defendant Feathers in approving the execution of the search warrant

as planned were conducted with reckless or callous indifference to the federally protected rights of the Plaintiff.

192. Approval of the plan under the circumstances set out above in light of this knowledge showed reckless or callous indifference to the federally protected rights of the Plaintiff.

193. The actions of the officers violated clearly established constitutional principles as set out above.

### Count VIII. Liability of the City of Powell for Failure to Train

Plaintiff incorporates each allegation contained herein above and for her cause of action under Count VIII states and alleges as follows:

194. The Chief of Police, Tim Feathers, is the official charged with final decision making authority for the Powell Police Department.

195. The Chief of Police acted in such capacity when he approved the plan to carry out the search warrant as described above.

196. Tim Feathers failed to provide sufficient training to his officers in the deployment of a SWAT team.

197. Tim Feathers failed to provide sufficient training to his officers in the deployment of flashbang devices.

198. Tim Feathers acted in reckless disregard of the constitutional rights of the citizens of Powell, Wyoming by failing to properly train his officers in dangerous police

tactics.

199. The failure to train his officers in proper procedures in the deployment of the SWAT team, and in the use of distraction devices of the type used here knowing that these forces would be used against the citizens of Powell, Wyoming showed a deliberate indifference to the rights of its citizens, the foreseeable result of which was the constitutional injury to the Plaintiff in this case.

200. The actions of the officers violated clearly established constitutional principles as set out above.

### Count IX. Intentional Infliction of Emotional Distress by the Officers

### Participating in the Search

Plaintiff incorporates each allegation contained herein above and for her cause of action under Count IX states and alleges as follows:

201. All of the Defendants who engaged in the execution of the search warrant at the Plaintiff's home acted recklessly or with the intent of causing the Plaintiff severe emotional distress.

202. Defendants' conduct caused plaintiff to suffer severe emotional distress.

203. As a direct and proximate cause of Defendants' actions, Plaintiff has suffered severe emotional distress, and manifestations of severe emotional distress, mental anguish, humiliation and other non-economic losses.

204. As a direct and proximate cause of the Defendant's actions, Plaintiff's property was

unnecessarily damaged and destroyed.

205. The Defendants who executed this search warrant intended to inflict extreme emotional suffering on the Plaintiff in her home in reckless disregard of the consequences, and under such circumstances and conditions that a reasonable person would know, or have reason to know, that such conduct would, in a high degree of probability, result in substantial harm to the Plaintiff.

206. This Court should award Plaintiff, in addition to compensatory damages awarded herein, punitive or exemplary damages, both to punish Defendants for their wrongdoing and to make an example of other persons who otherwise might be tempted to engage in similar behavior.

### Count X. Liability of the City of Powell and Chief Feathers under Plaintiff's Intentional Infliction of Emotional Distress Claim

Plaintiff incorporates each allegation contained herein above and for her cause of action under Count X states and alleges as follows:

207. The Defendant Feathers is liable to the Plaintiff for the actions of the Powell Police officers who executed the search warrant on her property for failure to properly supervise the execution of the warrant.

208. The Defenant Feathers is liable to the Plaintiff for the actions of the Powell Police Officers who executed the search warrant for failure to properly train the officers in the execution of a search warrant, proper use of a SWAT team, proper use of

flashbang devices, and proper use of deadly force.

209.  The Defendant City of Powell is liable for the torts of its officers under the theory of *respondeat superior*

210.  The Defendant Feathers was the chief decision maker for the Powell Police Department, a department of the City of Powell.

211.  Punitive damages should be awarded against Chief Feathers under Plaintiff's Intentional Infliction of Emotional Distress claim because:

   a.  Chief Feathers authorized the execution of the search warrant in the manner it was executed; and

   b.  the agents of the City of Powell who executed the warrant were unfit for lack of proper training, and the City of Powell through Chief Feathers was reckless in employing or retaining the untrained officers and allowing them to act as they did; and

   c.  the Chief of Police supervised the execution of the search warrant and was employed in a managerial capacity and was acting in the scope of his employment ; and

   d.  The Chief of Police ratified or approved the actions of the City of Powell police officers who were involved in the execution of the search warrant.

### Count XI. Violation of The Wyoming State Constitution

Plaintiff incorporates each allegation contained herein above and for her cause of

action under Count X states and alleges as follows:

212. The Wyoming Constitution at Article 1 § 4 provides "[t]he right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures shall not be violated."

213. Enforcement of this provision has paralleled interpretations of the Fourth Amendment to the U.S. Constitution.

214. Plaintiff restates Counts I through VIII of the Plaintiff's compliant as separate bases for violations of Article 1 § 4 of the Wyoming constitution. Plaintiff does not request for punitive damages against the City of Powell contained in the referenced counts as they pertain to violations of the Wyoming Constitution.

## *Damages Applicable to all Counts*

215. Plaintiff suffered severe emotional trauma during the course of the SWAT raid on her home.

216. Plaintiff continues to suffer emotional distress, loss of enjoyment of life, anxiety, and fear as a result of the actions of the officers.

   a. Plaintiff was unable to stay in her home after the search, and she and her husband sold it for a loss as a result of the way the officers conducted themselves in executing the search ("search").

   b. Plaintiff experiences unusual fear when she sees a police officer.

   c. Plaintiff quit her job because the Powell Police kept coming into her work.

   d.   She has been unable to breast feed her child because of the medications she is taking as a result of the search.

   e.   Plaintiff has expenses for medication and doctor bills which were the result of the search.

217.   The actions of the police resulted in unnecessary damage to the home. The value of the cost of the repair for that damage is approximately $5,000.00.

218.   Plaintiff is entitled to recover attorney's fees for violations of 42 USC 1983, and requests attorney's fees and costs of the action pursuant to 42 U.S.C. § 1988.

   Wherefore Plaintiff prays for damages as set out above and for such other and further relief as is just and equitable.

   **DATED** this Friday, June 25, 2010.

---

| **PLAINTIFF REQUESTS A JURY FOR ALL MATTERS TRIABLE BY JURY** |
|---|

Respectfully submitted,

JEFFREY C. GOSMAN
Plaintiff's Counsel
**GOSMAN LAW OFFICE**
PO Box 51267
Casper, Wyoming 82601
(307) 265-3082 (ph.)
(307) 265-6715 (fax.)