# EXHIBIT C

# EXPERT REPORT

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING**

| | | |
|---|---|---|
| **TRICIA WACHSMUTH,** | § | |
| **Plaintiff** | § | |
| | § | |
| | § | |
| | § | |
| **VS.** | § | **CASE NO.   10 cv  041J** |
| **CITY OF POWELL, and in their** | | |
| **Individual capacity, Tim Feathers,** | | |
| **Chad Miner, Mike Chretien, Roy Eckerdt,** | | |
| **Dave Brown, Mike Hall, Brett Lara,** | | |
| **Matt McCaslin, Alan Kent, Matt Danzer,** | | |
| **Officer Brilakis, Lee Blackmore** | | |
| **Cody Bradley, Kirk Chapman,** | | |
| **John Does #1-#4,** | § | |
| **Defendants** | | |

§

**AFFIDAVIT OF K. THOR EELLS**

| | | |
|---|---|---|
| **STATE OF COLORADO** | § | |
| | § | |
| **COUNTY OF EL PASO** | § | |

**BEFORE ME,** the undersigned authority, on this day personally appeared K. THOR EELLS, who having first been duly sworn, upon his oath deposed and testified as follows:

1. "My name is K. THOR EELLS. I am over the age of 21, of sound mind, competent to testify and have personal knowledge of the facts contained herein. All of my conclusions, opinions and observations stated in this Affidavit are within my personal knowledge, and are based on my law enforcement training and experience, and are based on the matters I personally reviewed.

2. I am presently employed as a police commander with the Colorado Springs Police Department in Colorado Springs Colorado. I have been employed with the Colorado Springs Police Department for over twenty three years. During that time I have worked in patrol,

investigations and tactical. I have served as a Field Training Officer, Sergeant, Lieutenant and Commander. I have received numerous commendations, the departmental Life Saving Award on four occasions and The Distinguished Service Medal.

3. I hold a Masters Degree in Criminal Justice from the University of Colorado, Graduate School of Public Affairs. I also hold police officer certification from the Colorado Commission on Peace Officer Standards and Training. I have been certified for over twelve years as a Non Lethal Use of Force Instructor, SWAT trainer and over twenty three years as a police officer. I have attended over 3100 hours of various law enforcement seminars and schools throughout the United States and am a graduate of the FBI National Academy.

4. In my career with the Colorado Springs Police Department, I have studied and attended seminars on the issues of policies and procedures, use of force, use of deadly force, reasonable suspicion, probable cause, police supervision, law enforcement training, patrol procedures, constitutional law, firearms, police officer involved shootings, and officer safety. I have also instructed classes in the areas of patrol procedures, probable cause, defensive tactics, officer safety, arrest procedures, use of force, use of deadly force, law enforcement policies and procedures, firearms, police supervision, first aid, various SWAT topics and many other subjects. I have been qualified in Federal and State courts as an expert witness in the areas of patrol procedures, use of force, use of deadly force, and non-lethal force.

5. I am a member of the National Tactical Officers Association and currently serve on the Board of Directors. I have served on the Department of Homeland Security Committee on SWAT Typing and Tactical Capabilities and DHS Committee on Law Enforcement Typing and Capabilities. I have instructed at the Texas Tactical Police Officers Association Annual Conference (2002-Present), Ohio Tactical Officers Association Annual Conference (2006-Present), Ontario Canada Police College 2006, National Tactical Officers Association annual conference (2007-Present); and various other locations throughout the United States, Canada, and Europe.

6. I have technical, professional and other specialized knowledge that will assist a trier of fact in understanding the facts and issues in the above-captioned lawsuit. The facts and data on which I base my opinions are of a type reasonably relied upon by experts in the field of law enforcement in forming opinions or inferences there from.

7. The attached resume contains a more complete listing of my training and qualifications

and is provided for reference of my experience, education, training, and skills which is incorporated herein by reference the same as if set forth at length herein.


## RESEARCH AND ASSESSMENT

8. My opinions, conclusions, and observations in this Affidavit are based on having reviewed and researched several documents including, in part: 1) CAD Incident Report 090224086  2) Powell Police Department Crime Report 09-223  3) Park County Sheriff's Report 09-231  4) Notice Of Complaint  5) Probable Cause Affidavits for Bret and Tricia Wachsmuth 6) Personal notes depicting planning information  7) Plaintiff Scene photos-44  8) Defendant's Scene photos-98  9) Defendant's Training Records

This report is preliminary as there will be additional information to be reviewed at a later date and this report is being submitted as there is an expert disclosure date to be met.


## Summary of Relevant Facts as Derived from the Evidence Reviewed

9. On February 24th, 2009, Sergeant Mike Chretien, of the Powell Police Department, was contacted by Sergeant Alan Kent, also of the Powell Police Department, and advised that officers would be serving a narcotics search warrant at Bret Wachsmuth's house, located at 870 E North Street, later that day. Sergeant Chretien was tasked with planning the warrant service and securing the scene for the processing of evidence. Sergeant Chretien was advised that Bret Wachsmuth was paranoid, a "peeper", mentally unstable, and on various medications. Additionally, Sergeant Chretien was told that Mr. Wachsmuth kept firearms in both the living room, northeast bedroom and carried a loaded firearm on his person. Sergeant Chretien was also told Mr. Wachsmuth had "armor piercing" ammunition. Sergeant Chretien was further briefed that Mr. Wachsmuth had a marijuana grow operation in his basement, but it was unknown how extensive the grow might be. It was also reported that Mr. Wachsmuth and his wife were receiving prescription drugs through the mail. Relying on this information Sergeant Chretien developed an operations plan for the service of this search warrant. Using his experience, training and knowledge from previous warrant service, Sergeant Chretien developed a plan incorporating techniques to mitigate danger to the residents and officers. This included the use of multiple breach points, adequate staffing and deployment of a distraction device. While this planning was taking place, Officer Lee Blackmore was watching the residence for any activity. On February 24th, 2009, at approximately 9:16 p.m. Officer Chad Miner and other officers from the Powell Police Department served a valid search warrant at 870 E North Street. While

approaching the residence a dog began barking which alerted their presence. Officer Kirk Chapman announced their presence, "Police, Search Warrant". When the door did not open, Officer Miner used a ram to open the door. At the same time, Sergeant Kent broke out the northeast window and after looking, Officer Matt McCaslin deployed a distraction device through the window into the unoccupied bedroom. Upon entry into the residence officers encountered and detained Tricia Wachsmuth. Officer Miner placed her in handcuffs and verified then for tightness and double locked them. Officers then conducted a search of the residence and did recover firearms and a marijuana grow operation consisting of two plants. No other persons were located in the residence. Powell Police Department officers were then able to locate Mr. Wachsmuth at his father's house, located in Park County. Officers did respond to that location and take Mr. Wachsmuth into custody at the direction of Assistant County Attorney Jonathan Davis.

## Opinions and Observations

10. The actions of the Powell Police Department officers were analyzed pursuant to what actions a reasonable and prudent law enforcement officer could have taken when presented with the same or similar circumstances that these officer's were presented with in connection with the search warrant service at Mr. Bret Wachsmuth's residence. The analysis is from the vantage point of what the Powell Police Department officer's knew and perceived at the time, with consideration given to the fact that law enforcement officers at times are required to make split second decisions in tense, dangerous, and rapidly evolving circumstances. The evaluation includes the circumstances surrounding the planning and service of the search warrant and whether the officer's actions constituted "excessive force".

### *Discretionary versus Ministerial Law Enforcement Functions*

11. In my professional opinion, the objective evidence indicates that the Powell Police Department officers were performing discretionary law enforcement functions, and more specifically, the functions related to the manner in which the search warrant service was planned and completed at 870 E North Street. In the law enforcement profession there is an indefinite number of circumstances that law enforcement officers may encounter when planning and serving a narcotics related search warrant. Law enforcement officers are trained to evaluate the

totality of the circumstances as viewed from their vantage point and to use their judgment and discretion at arriving at a reasonable course of action. When law enforcement officers are planning and serving a search warrant officers must use their discretion in deciding what options are appropriate and reasonable for the totality of the circumstances. It is inconceivable that any training manual and/or instruction could address every possible situation that a law enforcement officer may encounter; thus law enforcement officers are required to use their judgment and discretion.

12. Sergeant Mike Chretien had been trained in tactical operations and had prior experience in SWAT. Officer Chad Miner had a current instructor certification for distraction devices. Other officers present had a variety of police tactical training and experience.

13. In my professional opinion, the objective evidence indicates that the Powell Police Department officers were required to use their judgment and discretion in determining what options were appropriate and reasonable for the circumstances that they were presented with while planning and serving a valid search warrant at 870 E North Street. The officers were performing discretionary law enforcement functions, in connection with Ms. Tricia Wachsmuth and the service of the search warrant at the residence, which required them to use their personal deliberation and judgment.

**Reasonableness of the Powell Police Department Officer's Actions**

14. In my professional opinion, the preponderance of the evidence indicates that the Powell Police Department officer's actions were objectively reasonable and conducted in good faith.

15. The undisputable evidence indicates that Sergeant Chretien was tasked with planning a narcotics related search warrant service for 870 E North Street in Powell, WY. Sergeant Chretien was briefed that firearms were present and that one of the occupants was thought to carrying a handgun. Furthermore this occupant, Mr. Bret Wachsmuth was described as being mentally unstable, paranoid and on various medications. Any reasonable and prudent law enforcement officer could have reasonably suspected that Mr. Wachsmuth, and any other unknown persons who might have been present, might be a danger to the officers serving the warrant.

16. It is undisputable that Sergeant Chretien recognized the potential for danger to the

officers and occupants of the residence and took steps to mitigate these hazards. These steps included using distraction and additional police officers during the warrant service. Sergeant Chretien made specific assignments for the participating officers and briefed for contingencies, to include a delay at the front door. Each of these mitigating steps was reasonable given the threatening information that Sergeant Chretien had received. None of these steps are unique to SWAT and there utilization by officers does not constitute a SWAT team. The absence of any criminal history or prior calls for service at the residence does not eliminate the potential for danger to the officers.

17. The evidence indicates that as the Powell Police Department officers were approaching the house to serve the warrant their approach was compromised by a barking dog. Despite this exigent factor, Officer Chapman knocked on the front door and announced "police, Search Warrant". After the door did not open, Officer Miner used a ram to open it. Under the totality of the circumstances, it is not unreasonable for the officers to have believed that their safety had been compromised by the barking dog and a failure for the occupant(s) to open the door immediately. Any reasonable and prudent officer could have suspected that the occupants could be destroying perishable narcotics evidence and/or arming themselves with a firearm.

18. In my professional opinion, because of the totality of the circumstances, deploying the distraction device was objectively reasonable. The circumstances that existed at the time were:

  a) Mr. Wachsmuth was described as being a "peeper", paranoid and mentally unstable.

  b) Mr. Wachsmuth was described as carrying a handgun, possessing "armor piercing" ammunition and having other firearms present in the house.

  c) Evidence to be searched for was perishable.

  d) While approaching the house to serve the warrant, the officer's presence was compromised by a barking dog. This necessitated the entry team to announce their purpose before the backyard team could create another distraction.

  e) The room into which the distraction device was deployed was one in which the presence of weapons had been described to the officers.

  f) The officer deploying the distraction device LOOKED into the room to ensure it was clear of any hazards before deploying it.

g) Upon initiation the device caused minor scorching of a pillow, bed spread, and wall. There is no evidence of any fire.

19. In my expert opinion, the evidence overwhelmingly indicates that deploying the distraction device was objectively reasonable and within the parameters of law enforcement protocol. The purpose of the distraction device is to draw one's attention away, to prevent the destruction and most importantly prevent a suspect from arming themselves with a weapon. This is for everyone's safety as it prevents a violent encounter.

20. The actions of the Powell Police Department officers were reasonable and consistent with routine police practices. Planning a warrant service using distraction and additional manpower is used on a regular basis by narcotics detectives, fugitive apprehension teams and patrol officers. The information that had been provided to the officers made this a high risk warrant and the steps taken to mitigate this risk were prudent and reasonable.

21. It is important to note that the evidence later indicated that the information provided by the confidential informant was accurate to include the location of both the firearms and marijuana grow operation.

22. The opinion offered in this affidavit is preliminary based upon the information as noted earlier. I will offer supplemental opinions regarding policy, procedures and training following the review of additional information.


FURTHER AFFIANT SAYETH NOT

_____
K. THOR EELLS

Subscribed to before me the undersigned authority on this ____1st____ day of November, 2010.
_____, NOTARY PUBLIC in and for the STATE OF COLORADO   Commission expires _06/19/2013_

