Thomas A. Thompson
MacPherson, Kelly & Thompson, LLC
616 West Buffalo St.
P.O. Box 999
Rawlins WY  82301
(307) 324-2713
(307) 324-7348 (fax)
Attorneys for Defendants, City of Powell, Tim Feathers,
Chad Miner, Mike Chretien, Roy Eckerdt, Dave Brown,
Mike Hall, Brett Lara, Matt Mcccaslin, Alan Kent,
Matthew Danzer, Officer Brilakis, Lee Blackmore,
Cody Bradley and Kirk Chapman, all in their official
capacity

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

TRICIA WACHSMUTH,

      Plaintiff,

      vs.                                 Civil Action No. 10- CV-041-J

CITY OF POWELL, TIM FEATHERS, CHAD MINER,
MIKE CHRETIEN, ROY ECKERDT, DAVE BROWN,
MIKE HALL, BRETT LARA, MATT McCASLIN,
ALAN KENT, MATTHEW DANZER, OFFICER BRILAKIS,
LEE BLACKMORE, CODY BRADLEY, KIRK CHAPMAN
JOHN DOES #1-#4

      Defendants.

## DEFENDANTS' MEMORANDUM IN SUPPORT OF
## MOTION FOR SUMMARY JUDGMENT

**COME NOW**, the above named Defendants, City of Powell and all those individually named

Defendants in their official capacities, by and through their attorney, Thomas A. Thompson, and

hereby submit their *Memorandum In Support of Defendants' Motion For Summary Judgment*. These

Defendants also incorporate the arguments set forth in the *Memorandum* filed by counsel for all

Defendants in their individual capacities.

## UNDISPUTED FACTS

The factual basis of Plaintiff's *Second Amended Complaint* is the alleged constitutional violations by officers of the Powell Police Department in the execution of a "knock and announce" search warrant. (Exhibit "A", *Search and Seizure Affidavit* and *Warrant*, Chretien Dep. Ex. 13 & 17). That "knock and announce" search warrant was obtained by Defendant Chad Miner, an officer of the Powell Police Department who based his *Search and Seizure Affidavit* upon information received from a confidential informant. The *Affidavit* contained information that the Plaintiff's husband was conducting a marijuana grow operation in the basement of their home. Additionally, the confidential informant had indicated that the Plaintiff and her husband had numerous firearms in the residence, including handguns and rifles. (Exhibit "A", *Search and Seizure Affidavit* at p. 4). The execution of the *Search and Seizure Warrant* was conducted on February 24, 2009 by members of the Powell Police Department. In addition to seizing two mature marijuana plants, the Powell Police Department also seized numerous drug paraphernalia, a marijuana grow log, grow books, grow lights, a scale, loaded handguns, rifles, two (2) books which were titled drug bibles and miscellaneous information on growing marijuana. (Exhibit "B", Evidence Record, McCaslin Dep. Ex. 23).

Defendants incorporate by reference those additional undisputed facts included in the *Memorandum* filed by counsel for all Defendants in their individual capacities. Additional facts will be set out, as necessary in the body of the argument below.

## ARGUMENT

The Plaintiff alleges eleven counts against the Defendants that are couched as "excessive force in the execution of a search warrant that was unreasonable and violated the Fourth Amendment of the United States Constitution" and "State law claims for intentional infliction of Emotional

Distress and violation of the Wyoming Constitution Article 1 § 4" are also included. (Plaintiff's *Second Amended Complaint* at ¶1 and ¶2).  Plaintiff goes on to allege violations of her rights under 42 U.S.C. §1983 and WYO. STAT. §§ 1-39-101 through 1-39-120, et seq.: Tortious Conduct of a Peace Officer.

## I.
## Standard of Review

Summary judgment is appropriate "if the pleadings, the discovery and disclosure  materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). The party seeking summary judgment bears the initial burden of showing the absence of a genuine issue of material fact, including a lack of evidence supporting the plaintiff's claims. *Serna v. Colorado Dept. Of Corrections*, 455 F.3d 1146, 1151 (10th Cir. 2006). An issue of material fact is genuine if a reasonable jury could return a verdict for the non-movant. *Jenkins v. Wood,* 81 F.3d 988, 990 (10th Cir. 1996). The moving party does not have to negate the non-movant's claim in order to obtain summary judgment. *Allen v. Muskogee,* 119 F.3d 837, 840 (10th Cir. 1997). "[T]he movant only bears the initial burden of ' "showing"- - that is pointing out to the district court-that there is an absence of evidence to support the nonmoving party's case." *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed. 265 (1986)).   "If the movant carries this initial burden, the non-movant may not rest upon its pleadings, but must set forth specific facts showing a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." *Barney v. Pulsipher,* 143 F.3d 1299, 1307 (10th Cir. 1998).

**II.**
**Plaintiff's Allegations of Violations**

The Plaintiff alleges various violations committed by the Defendants as set forth in her *Second Amended Complaint* as Count I through Count XI. The Plaintiff alleges that the City of Powell, through its police officers violated her constitutional rights by the use of a Special Weapons and Tactics (SWAT) Team in the execution of a search warrant (Count I), use of a flashbang device that allegedly constituted excessive force (Count II), excessive force in using Plaintiff as a human shield (Count III), excessive force by keeping the Plaintiff at gunpoint during the search of the premises (Count IV), use of excessive force by failing to knock and announce (Count V), liability of Defendant Feathers for his supervisory role in the search, failure to properly supervise the search and failure to train his officers (Count VI), liability of Defendant City of Powell for reckless indifference to the Fourth Amendment Rights of the Plaintiff in the context of Defendant Feathers approving the plan for execution of the search warrant (Count VII), liability of Defendant City of Powell for failure to train (Count VIII), intentional infliction of emotional distress by the officers participating in the search (Count IX), liability of Defendant City of Powell and Defendant Feathers under Plaintiff's intentional infliction of emotional distress claim (Count X) and violation of the Wyoming State Constitution (Count XI).

The *Second Amended Complaint* filed herein lacks specificity as to whether all Defendants are being sued in their "personal capacity" or in their "official capacity", or both. However, it is evident from the deposition testimony of Defendant Tim Feathers, who is the Chief of Police for the City of Powell Police Department, that he is the only policymaker for the City of Powell Police Department. (Exhibit "C", Feathers Dep. at 4, 6 and 8-9).

Q. (By Mr. Gossman). Well, what does the policy say, itself, with regard to your authority relative to your police officers?

A. (By Chief of Police, Tim Feathers). This policy?

Q. Yes. Could you go ahead and read that portion? Let's see. Let me just point it out to you. This first paragraph under "policy statement."

A. The first paragraph?

Q. Yeah. Go ahead.

A. "The Chief of Police of the City of Powell shall have the authority to adopt policies, procedures, rules and regulations for the effective and efficient administration and management of the agency.

"All policies, procedures, rules and regulations contained in this manual shall be subordinate to the Powell City Employees Handbook, which is adopted in its entirety, except where noted and approved by the governing body.

"These policies, procedures, rules and regulations supercede all previous policies, procedures, rules, and regulations and shall have the same authority as those in existence.

"Policies, procedures, rules, and regulations shall not be canceled, amended, or issued without the approval of and verified by the signature of the Chief of Police or, in his absence, the officer designated to act in his behalf."

(Feathers Dep. at 7-9).

There is no evidence in the record to suggest any of the other officers have policymaking authority. Regardless, a suit against any of the named officers in their "official capacity" is a suit against the City of Powell. "[A] section 1983 suit against a municipality and a suit against a municipal official acting in his or her official capacity are the same." *Myers v. Okla. County Bd. Of County Comm'rs*, 151 F.3d 1313, 1316 n. 2 (10th Cir. 1998)(quoting *Watson v. City of Kansas City*, 857 F.2d 690,695 (10th Cir. 1998). Thus, a plaintiff suing an official in his official capacity must prove the elements of a § 1983 suit against a municipality: (1) that a municipal employee committed

a constitutional violation, and (2) that a municipal policy or custom was the moving force behind the constitutional violation. *Id.* at 1316 (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)).

### III.
### Violation of 42 U.S.C. § 1983

In this matter, the Plaintiff attempts to impose liability upon the City of Powell largely based upon the alleged unconstitutional actions of the individual officers, or inactions of the chief of police in both training and supervision. It is well settled that there is no "respondeat superior" liability under Section 1983. See *Duffield v. Jackson,* 545 F.3d 1234, 1239 (10th Cir. 2008).  Therefore, the Plaintiff must establish an independent basis for liability. *Milligan-Hitt v. Board of Trustees of Sheridan County, et al.*, 523 F.3d 1219, 1223 (10th Cir. 2008)(citing *Monell v. Dept. of Social Services*, 436 U.S. 658, 690-95, 98 S Ct. 2018, 56 L.Ed.2d 611 (1978).

> "To state a claim under § 1983, Plaintiffs must allege that they were deprived of a right 'secured by the Constitution and laws' of the United States and that this deprivation was committed under color of state law. *Am. Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 49-50, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999)." *Yanaki v. Iomed, Inc.*, 415 F.3d 1204, 1207 (10th Cir. 2005). However, in order to state a claim under Section 1983 against a governmental entity, a plaintiff must prove that the constitutional deprivation was caused by that entity's policy, practice, custom or procedures, whether formal or informally established.  *See Monell v. Department of Soc. Servs.,* 436 U.S. 658, 694, 98 S.Ct. 2018, 2037- 38, 56 L.Ed.2d 611 (1978).

In this instance, the City of Powell may be held liable under 42 U.S.C. § 1983 only for its own unconstitutional or illegal policies and not simply for the tortious acts of its employees. As stated above, even if one of the individually named Defendants is found to have committed a constitutional violation, that alone does not impose liability on Defendant City of Powell. "To succeed in a § 1983 claim against a municipality, a plaintiff must show two elements: "(1) a

municipal employee committed a constitutional violation, and (2) a municipal policy or custom was the moving force behind the constitutional deprivation." *Cordova v. Aragon,* F.3d 1183, 1193 (10th Cir. 2009)(citing *Walker v. City of Orem,* 451 F.3d 1139, 1152 (10th Cir. 2006).

In this matter, the record is devoid of any formal policies, statements, ordinances or regulations that have operated to deprive the Plaintiff of her constitutionally protected rights. Turning then to Plaintiff's *Second Amended Complaint* and rooting through the numerous allegations that may impose liability on the City of Powell, the crux of Plaintiff's *Second Amended Complaint* alleges liability based upon failure to properly train and supervise, or liability based on the conduct of policymaking officials

### A.
### Policies or Procedures

Plaintiff is unable to point this Court to any facts supporting unconstitutional or illegal policies or procedures that have been formally adopted by the City of Powell. In this instance, the record indicates that the City of Powell had an official policy and procedure manual that was adopted by the Chief of Police. (Exhibit "C", Feathers Dep. at 6-8). This manual contained numerous policies and procedures that were effective on the date of the incident, which is the basis of Plaintiff's *Complaint*. However, Plaintiff is unable to point to any official policy or procedure adopted by Defendant Feathers or the City of Powell in regards to an alleged violation of her constitutional rights.

Likewise, Plaintiff is unable to point this Court to any facts in support of an allegation of unconstitutional custom or usage by the Powell Police Department. The record contains no facts that would demonstrate an unconstitutional custom or usage. In order to establish a case based on a

custom or usage, a plaintiff must establish that the specific conduct complained of truly reflects practices of public officials that are so permanent, pervasive, and well settled as to constitute a "custom or usage" with the force of law. *Brammer-Hoelter v. Twin Peaks Charter Academy*, 602 F.3d 1175, 1189 (10th Cir. 2010). The law mandates that the "custom and usage" in question will be attributed to the governmental body only when the "duration and frequency of the practice warrants a finding of either actual or constructive knowledge by the . . . governing body [or the policymaker with responsibility for oversight and supervision] that the practices have become customary among its employees. *Spell v. McDaniel*, 824 F.2d 1380, 1387 (4th Cir. 1987).

Even if Plaintiff was able to point to a policy, procedure, custom or usage that she alleges violated her constitutional rights, her burden does not end there. She must also show that the policy, procedure, custom or usage was the "moving force" behind the alleged constitutional violation. The 10th Circuit has applied the holding in the Supreme Court decision of *Board of County Commissioners v. Brown* regarding municipal liability.

> "The Supreme Court recently revisited the issue of municipal liability and held that a municipality is liable only when the official policy is the 'moving force' behind the injury alleged. That is, a plaintiff must also show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and deprivation of federal rights." *Board of County Comm'rs v. Brown,* 520 U.S. 397, ----, 117 S.Ct. 1382, 1388, 137 L.Ed.2d 626 (1997).

> The Supreme Court observed in *Brown* that when an official municipal policy itself violates federal law, issues of culpability and causation are straightforward; simply proving the existence of the unlawful policy puts an end to the question. *See id.* at ---- - ----, 117 S.Ct. at 1388-89. The Court distinguished the above situation from a case in which the policy at issue is lawful on its face and the municipality therefore has not directly inflicted the injury through its own actions. The Court concluded that determining culpability and causation in the latter circumstance "present[s] much more difficult problems of proof." *Id.* at ----, 117 S.Ct. at 1389. In these situations, in keeping with the dictates of *Monell,* the Court believed that "rigorous standards

of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee." *Id.* Ms. Barney and Ms. Christensen do not contend the County maintains an official policy of sexually harassing, assaulting, or discriminating against women prisoners. Nor do they contend Sheriff Limb authorized Mr. Pulsipher's sexual assaults. Rather, plaintiffs essentially argue the County is liable for its conduct in hiring and training Mr. Pulsipher. Accordingly, this situation falls within that category of cases in which the Supreme Court has mandated that "rigorous standards of culpability and causation must be applied." *Id.* at ----, 117 S.Ct. at 1389.

*Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998).

In the case now before this Court, Plaintiff cannot meet her burden of establishing the existence of an unconstitutional or illegal policy, procedure, custom or usage in order to survive this motion for summary judgment. The record does not support those "rigorous standards of culpability and causation" as mandated by the Supreme Court in *Brown*. Simply stated, the record is devoid of any such proof and Plaintiff falls short of the mandate set forth in the *Brown* decision. Defendants are entitled to summary judgment on this matter.

## B.
## Training

The legal standard for the evaluation of claims which allege a failure to train, instruct, supervise and discipline is quite literally the highest known to civil law: a plaintiff must establish that the defendant acted with "deliberate indifference", which is defined as conduct that is "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness". *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986). It means conduct that is demonstrated by "actual intent" or "reckless disregard of a substantial risk of danger that is either known or which would be apparent to a reasonable person in the defendant's position". The test to

be applied is an objective one of law for the court. See, generally, *Farmer v. Brennan*, 511 U.S. 825 (1994).

Throughout the depositions of the individually named Defendants, the Plaintiff spent considerable time reviewing the training each individual officer received, both by reviewing the officer's Wyoming POST (Police Officer Standards and Training) training records and a review of that training received by the officer through the internal training of the Powell Police Department. (Exhibit "D", Training records of officers). The testimony of the officers on training along with the individual's training records evidence more than adequate training by the City of Powell. In fact when questioned, the individual officers testified about POST training in the area of dynamic entry, training in the use of a flash bang device; team training on dynamic entry and departmental training in a variety of areas. (See, e.g. Exhibit "E", Matthew Danzer Dep. at 21, 24-29, 42-43;  Chad Miner Dep. at 12-21;  Brett Lara Dep. at 22-27;  Mike Hall Dep. at 9-13, 17-18;  Dave Brown Dep. at 17-28;  Roy Eckerdt Dep. at 6-16;  Alan Kent Dep. at 14-16, 40-45;  Cody Bradley Dep. at 7-9, 12-14).

In this instance, the Plaintiff's Complaint sets forth various causes of action based upon allegations of failure to train and excessive use of force. The legal standard for failure to train is discussed in the opinion of the *Carr v. Castle* case, as follows:

> "Hence the focus of the current appeal is on the allegedly improper training that the officers received. *Brown v. Gray*, 227 F.3d 1278, 1286 (10th Cir. 2000) has quoted from *Allen v. Muskogee*, 119 F.3d 837, 841-42 (10th Cir. 1997), in turn relying on *City of Canton v. Harris*, 489 U.S. 378, 388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989) to set out the requirements of a failure to train:
>
> In order to prevail on a claim against a municipality for failure to train its police officers in the use of force, a Plaintiff must first prove the training was inadequate, and then satisfy the following requirements:

> (1) The officers exceeded constitutional limitations on the use of force; (2) the use of force arose under circumstances that constitutes a usual and recurring situations with which police officers must deal; (3) the inadequate training demonstrates a deliberate indifference on the party of the city toward persons with whom the police officers come into contact, and (4) there is a direct causal link between the constitutional deprivation and the inadequate training. *Carr v. Castle*, 337 F.3d 1221, 1228 (10th Cir. 2003).

Even assuming that the Plaintiff can somehow demonstrate those first two requirements, it is the other two *City of Canton-Brown* requirements that the Plaintiff cannot demonstrate. Facts that would support a showing of deliberate indifference are nowhere to be found in the record.

In the case of *Stuart v. Jackson*, 24 Fed. Appx. 943, 2001 WL 1600722 (10th Cir. 2001), the plaintiff sued the county and its sheriff's department under 42 U.S.C. § 1983 alleging that sheriff's deputies used excessive force through use of semi-automatic assault weapons during their execution of a misdemeanor search warrant. *Id.* at 947. The complaint alleged violations under 42 U.S.C. § 1983 including excessive force through use of rifles and the county's failure to adequately train and supervise the county defendants. *Id.* at 957-948. The district court granted summary judgment to the county defendants on the excessive force and failure to train claims. In addressing the failure to train claim against the sheriff in his official capacity the appellate court stated as follows.

> "The plaintiffs have failed to demonstrate that Fremont County's alleged failure to adequately train its officers caused any constitutional violation in this case. Inadequate police training may give rise to a § 1983 liability only when the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact. See *City of Canton v. Harris*, 489 U.S. 378, 388, 109 S.Ct. 1197, 103 L.Ed.2d (1989). "Only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a [municipal] 'policy or custom' that is actionable under § 1983." *Id* at 389, 109 S.Ct. 1197.

> In their cross-appeal brief, the plaintiffs do not point to any evidence in the record which shows the substance of the County's training policies or procedures or the

alleged inadequacies of any such policy. Likewise, the plaintiffs do not demonstrate how "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the [municipality] can reasonably be said to have been deliberately indifferent to the need." *Id* at 390, 109 S.Ct. 1197.  The requirement that a municipal policy caused the alleged constitutional violations "will not be satisfied by merely alleging that the existing training program for a class of employees, such as police officers, represents a policy for which the [municipality] is responsible." *Id.* at 389, 109 S.Ct. 1197. In light of plaintiffs' failure to demonstrate how any of the County's training policies were inadequate, much less deliberately indifferent to the rights of its citizens, this court affirms the district court's grant of summary judgment for defendant Rea in his official capacity." *Id* at 956.

In the case of *Whitewater v. Goss*, 192 Fed.Appx. 794, 2006 WL 2424788 (10th Cir.  2006), homeowners brought a 42 U.S.C. § 1983 action against county, and the county sheriff, in her official capacity, alleging violations of their constitutional rights in connection with the use of a SWAT team, and the holding of their son at gunpoint during the search of their home. The district court granted summary judgment in favor of the county and the plaintiffs appealed. The facts of the case were as follows:. The SWAT team executed a search warrant for the plaintiffs' house; the sheriff made the decision to use the SWAT team but did not participate during the initial entry*,* the SWAT team entered the house with guns drawn, secured the premises, and escorted the plaintiffs outside the house. The plaintiffs alleged that their 12-year-old son was held at gunpoint for at least 15 minutes during the intrusion. *Whitewater,* 192 FedAppx. at 796. The plaintiffs contended that liability could be based on a county policy regarding the use of firearms in executing a search warrant and on the failure to train and supervise the SWAT team. *Id* at 797.

"We hold that Plaintiffs' SWAT-team fails because use of the SWAT team did not in itself violate Plaintiffs' constitutional rights. As for the claim that Bryan Johnson was improperly held at gunpoint, we need not decide whether this was a constitutional violation, because any violation was not caused by a County policy or custom." *Id.*

The court went on to discuss the use of the SWAT team:

The Fourth Amendment requires examination of not only whether a particular search or seizure was justified, but also whether it was conducted in a reasonable manner. *See Tennessee v. Garner*, 471 U.S. 1, 7-8 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985). In *Holland v. Harrington*, 268 F.3d 1179 (10th Cir. 2001), we said that "Fourth Amendment scrutiny extends . . . to the decision to employ a SWAT team to make an arrest . . . and to conduct a search of a residence," *id.* At 1189, but that such a decision was not unreasonable unless the decisionmakers knew "that the SWAT team would use excessive force, intending to cause harm to any person, or . . . instructed the SWAT team to use excessive force while conducting the raid," *id.* at 1191.

Plaintiffs contend that Sheriff Goss unreasonably decided to use the SWAT team under a blanket policy to employ the team for all searches in narcotics cases. But they have not presented any evidence that Sheriff Goss knew the team would use excessive force, intended to cause harm, or instructed the team to use excessive force. Without such evidence the mere decision to deploy a SWAT team, even under a blanket rule does not offend the Fourth Amendment. *Cf. Richards v. Wisconsin,* 520 U.S. 385, 395, 117 S.Ct. 1416, 137 L.Ed.2d 615 (1997) (rejecting a blanket exception to the knock-and-announce rule in felony drug investigations, but concluding that the particular no-knock entry at issue was justified under the Fourth Amendment); *Heller*, 475 U.S. at 799, 106 S.Ct. 1571 ("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized the use of constitutionally excessive force is quite beside the point.").

*Id.* at 797-798.

The *Whitewater* court also discussed the alleged liability of the county because of a departmental policy requiring SWAT-team members to secure at gunpoint all occupants, including juveniles, until the residence had been secured. *Id* at 798. Plaintiffs conceded at oral argument that the policy by itself was not unconstitutional, but asserted that the policy caused the violation because the twelve (12) year old child was held at gunpoint for an unreasonable amount of time. *Id.* The court disagreed. "A commonsense interpretation of this policy would not authorize an officer to hold a 12-year-old at gunpoint for 15 minutes without reasonable grounds to do so. Plaintiffs have not shown

a 'direct causal link' between the policy and the alleged constitutional deprivation. *Id* at 798. (citing *Brown*, 520 U.S. at 404, 17 S.Ct. 1382).

Here, the Plaintiff has not produced any evidence that the City of Powell, or Chief Feathers was deliberately indifferent in the training of its officers related to the facts at issue in this matter, or related to the execution of the search warrant. The training received by the officers on dynamic entry, use of a flashbang device and other aspects in the execution of a search warrant is undisputed. (*See* Exhibits "D" and "E").

When Defendant Feathers, the chief of police, was asked about training received by the Powell Police Department since 2005, he responded as follows.

> Q. (By Mr. Gossman) All right. And I don't really care a whole lot about their training other than what pertains to dynamic entry and the various features of a dynamic entry. What I would like to know from you, Chief, is: What is the training program for providing this specific form of training to the Powell police officers?
>
> A. (By Chief of Police Tim Feathers) For clarification, let me restate your question.
>
> Q. Yeah.
>
> A. You want to know what ongoing training in the area of dynamic entry the Powell Police Department provides for its officers?
>
> Q. Right, yes.
>
> A. Okay. We've had Countermeasures Tactical Institute in 2005 and deliver a block of training for us. After that training, we were incorporating into our in-service training periodic -- I don't know if you want to call it practice, drills, exercises, reviews of that subject matter.
>
> Q. Let's go back to the Patrol Tactic Response Program that was put on. Apparently, Countermeasures Tactical Institute came to the Cody area?
>
> A. They came to Powell.
>
> Q. Powell. Did you ask all of the Powell police officers to attend this program?

A. All of our officers attended the program that were with us at that time.

Q. All right. Was that a mandatory program?

A. Yes.

Q. And did you have this training with the idea in mind that you would assemble a team, some kind of tactical response team, not necessarily a SWAT team,but at least a special operations team with the Powell Police Department?

A. No.

Q. Did you -- you attended this course as well, did you not?

A. Yes.

Q. And did you understand that this course was to provide a level of tactical training that was not equal to that that would be afforded to a true SWAT team?

A. Yes.

Q. And did you understand that there were activities that could be conducted below at the level of a SWAT team with additional training?

THE WITNESS: What do you mean by activities ?

Q. I mean by activities , critical events such as high-risk warrant service. And I'll stop there since that's the only one we're interested in.

A. Yes.
. . . .
A. I was seeking to provide to the officers of the Powell Police Department a level of training that would equip them to conduct those functions when we needed to.

Q. All right. Was this the first step or was this the beginning and the end of that training effort?

A. The purpose of the Countermeasures course in 2005 was to establish the basic skill level.

Q. And beyond that, the training that has occurred relative to that basic skill level has been in-house by the Powell Police Department up until, at least, November -- February of 2009?

A: Most of it would have been conducted in-house.

. . . .

Q. Have Powell Police Department officers been involved in joint training exercises with other agencies here in the area?

A. Yes.

Q. And are those training exercises documented?

A. Well, I know some of them are. I don't know if all of them are.

Q. And which agencies have Powell Police Department officers participated in with other agencies?

A. Park County Sheriff's Office, Cody Police Department, Wyoming Highway Patrol. I'm not sure about Wyoming Game and Fish officers. And I'm not sure about DCI agents.

Q. All right. Let's limit that question to dynamic entry tactics. Which agencies have Powell police officers been involved in joint training?

A. Well, Park County SO and Cody PD both sent officers to the Countermeasures training both times we hosted it here.

Q. Countermeasures training, and that would have been -- yes, I understand that's the 2005 session. And then the one that occurred in 2009, correct?

A. Yes.

Q. All right.

A. I know we have sent several officers over to Cody when they hosted joint training. Our TFOs --well, not just our TFOs, any officer we've sent to the DCI drug investigation school has some training on warrant service with the DCI in that school. Officers we've sent to the DEA, Drug Investigation School,  likewise, get training in that school.

. . . .

Q. Now, Officer -- was it Chapman that we just heard from, or Bradley? The last officer that we deposed?

A. Officer Chapman was the last one before me.

Q. All right. Okay. Thank you. He testified that he had been involved in training exercises involving room clearing and other dynamic entry techniques at the -- at some schools here in Powell and perhaps in Cody. You heard him testify to that?

A. Yes.

Q. What was that about?

A. Part of the in-service training that was provided during this timeframe included training on entry and room clearing. And when we could get buildings available to us to do that, we would make use of them. Schools. The school district will commonly make their buildings available to us for training purposes because it's obviously mutually beneficial for them to have us regularly training in their facility if they have a crisis there. So the new high school they moved into in --it was either August of '08 or August of '09. I believe it was August of -- I don't remember, it was one or the other. When they made that transition and moved out of the old high school, right before they did, they allowed us to use that for a training exercise. And, in fact, we did that jointly with their staff on a staff day over there where there were no students in the facility.

And then before they moved into the new high school, we held a full-scale exercise with fire, EMS, and law enforcement at the new high school. Also, they built a new Southside school. This is the third year they have been in it, so they would have moved into that in '08. And when they vacated the old Southside school, they made it available to us to do training in -- limited training because they're now using the facility again. We weren't allowed to breach doors or discharge flashbangs or anything like that in the building, but we were able to go in and practice room clearing and entry. And that was done both at the level of what is documented in the in-service training as well as at the squad level, which is not documented in this in-service training; whereas, sergeants had opportunities with their squads, they could just take their squad and go train. That training might be -- might be 30 minutes, it might go a couple hours, depending on what they wanted to focus on in the training in their squad. That is the training that is probably not documented anywhere.

(Exhibit "A", Feathers Dep. At 20-25, 27-29).

Here, the training records of the officers, the discussion by each officer of training received, as well as the above-referenced dialogue between Plaintiff's counsel and the Chief of Police indicate anything but deliberate indifference. Furthermore, Plaintiff is unable to point to any evidence that

Page 17 of  24

Defendant Feathers, or the City of Powell were put on notice that any constitutional violations that were alleged to have been committed by individual Defendants had occurred on prior occasions, or that said alleged constitutional violations should have been expected absent some training not given to the members of the Powell Police Department.

The training received by the Powell Police Department was comprehensive and more than adequate. The record in this case does not support inadequate training, nor get anywhere close to deliberate indifference. There is no issue of material fact which would support deliberate indifference on the part of Chief Feathers or the City of Powell. Defendants are entitled to summary judgment on this matter.

## C.
### Supervision

The same standard which applies to determining deliberate indifference in training applies when determining inadequate supervision . "[A] municipality may be held responsible under § 1983 for inadequate supervision and training of its employees 'only where the failure to train amounts to deliberate indifference to the rights of persons with whom the [employees] come in contact.'" *Schepp v. Fremont County, Wyo.*, 900 F.2d 1448, 1454 (10th Cir. 1990) (quoting *City of Canton v. Harris,* 489 U.S. 378, 109 S.Ct. 1197, 1204, 103 L.Ed.2d 412 (1989)). "Supervisors are only liable under § 1983 for their own culpable involvement in the violation of a person's constitutional rights." *Serna v. Colorado Dept. of Corrections*, 455 F.3d 1146, 1151 (10th Cir. 2006). Accordingly, in order to find supervisor liability under § 1983 "it is not enough for a plaintiff merely to show a defendant was in charge of other state actors who actually committed the violation. Instead, . . . the plaintiff must establish 'a deliberate, intentional act by the supervisor to violate constitutional rights.'" *Id. (quoting*

*Jenkins v. Wood,* 81 F.3d 988, 944-995 (10th Cir. 1996)). In short, the supervisor must be personally involved in the constitutional violation, and a sufficient causal connection must exist between the supervisor and the constitutional violation." *Id.*

In the present case, Plaintiff alleges liability against the City of Powell for Defendant Feather's failure to supervise. It is undisputed that Defendant Feathers did not participate in the execution of the search warrant. Plaintiff's allegation of liability appears to be premised upon Defendant Feathers review of the plan and delegation to Defendant Chretien of the planning for the execution of the search warrant.

This same argument was recently addressed by the Federal District Court for the District of Colorado in *Johnson v. Town of Vail.* The court discussed municipal liability under a theory of ratification:

> "Plaintiff also alleges that the Town is subject to municipal liability under a theory of ratification. While a municipality cannot be held liable under § 1983 on a respondeat superior theory, see *Monell v. Dept. Of Social Services,* 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611(1978), the Tenth Circuit has recognized that a municipality may be held liable under § 1983 "if a subordinate's position is subject to review by the municipality's authorized policymakers and the authorized policymakers approve a subordinate's decision and the basis for it, their ratification will be chargeable to the municipality. *Moss v. Kopp, supra.* 559 F.3d at 1168-69 *(citing City of St. Louis v. Praprotnik,* 485 U.S. 112, 127, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988)). However, "proof of a single incident of unconstitutional activity is ordinarily not sufficient to impose municipal liability, and where a plaintiff seeks to impose municipal liability on the basis of a single incident, the plaintiff must show the particular illegal course of action was taken pursuant to a decision made by a person with authority to make a policy decision on behalf of the entity being sued.
>
> In response to this motion, Plaintiff argues that "the reviewing authority, made up of Sgts. Craig Bettis and Mark Allen, approved the conduct of Officers Applegate and Deery as not constituting excessive force or unlawful arrest" in that they approved the primary and supplemental incident reports pertaining to this matter, and Sergeant Allen approved the criminal filings made against Plaintiff. She further asserts that "[h]ence, the conduct of Officers Applegate and Deery was judged by the persons

charged with the responsibility of reviewing that the conduct to be within the policies and procedures of Vail, consistent with its training and ratified by it." *Johnson v. Town of Vail,* 2009 WL 1394263, 9 (D.Colo. 2009).

Again, it is undisputed that Defendant Feathers delegated the tactical execution of the service of the search warrant to Defendant Chretien. As evidenced by his own testimony, Defendant Chretien was a sergeant with the Powell Police Department and had worked as a police officer for the College Park Police Department, outside of Atlanta, Georgia from 2002 through 2007. Defendant Chretien had extensive SWAT training including dynamic entries, use of flashbang devices, entry into premises and had worked on a SWAT team in Geogia as a team leader. Defendant Chretien had been involved in approximately fifty (50) raids with the SWAT team. (Exhibit "F", Chretien Dep. at 13-28, 48-49 and Dep. Exhibits 1, 2 and 6).

Additional allegations of the Plaintiff as to liability appear to also be premised upon the use of dynamic entry as the means of executing the search warrant. However, Defendant Feathers explained that this was just one option for execution of the "knock and announce" search warrant:

> MR. GOSMAN:
> Q. And do you remember thinking about whether, since it appeared clear at some point in the course of the afternoon or early evening that you were considering a dynamic entry, that you might want to consult with Lt. Patterson about his SRG team and see if you could get his expertise and the expertise of his team to assist in this warrant service?
>
> THE WITNESS: I was not considering a dynamic entry at any point during the afternoon.
>
> MR. GOSMAN: Q. When did you begin to consider that?
>
> A. Later in the evening after there had been a full debrief of the informant and Sergeant Kent called me at home to give me the information that they possessed and we discussed various options.

Q. What was the information that was conveyed to you by Sergeant Kent at that time?

A. That there was a report of a marijuana grow operation, that it involved a number of plants. I don't remember the estimated number right now, but I believe it was somewhere around a dozen plants. That the informant also reported that they were receiving prescription medication through the mail, hidden in stuffed animals from Tricia Wachsmuth's mother, and that there may be prescription meds there as well.

That Bret Wachsmuth had strategically placed loaded firearms around the home, that he sometimes carried a loaded firearm, that he was paranoid, that they would peek out the windows a lot, that he had some form of a prior mental health history.

That Sergeant Eckerdt had seen this picture on MySpace with Bret and Shawn wearing body armor and holding rifles.

That the informant had called Bret and told him that he was going to turn him into us, so Bret had been forewarned that we were aware of his grow operation.

That -- I believe at the time of the first call, Officer Miner was in the process of getting the warrant. I don't know that he had obtained it yet. And we talked about some various options.

. . . .

A. As the planning was being developed there was contingency planning taking place of how to go about serving a search warrant, serving this search warrant under these circumstances. No final decisions had been made at this point. However, I did instruct Sergeant Kent that he was to oversee the investigation and that he was totask Sergeant Chretien with developing a plan for the safe execution of the search warrant given the totality of the circumstances of the information presented to us and that I wanted to review that plan before it was finalized.

Q. And when did you review that plan before it was finalized?

A. Later that evening in a phone call from Sergeant Chretien.

(Exhibit "A", Feathers Dep. at 129- 132).

The evidence in this case suggests that although not directly involved in the plan for the

execution of the "knock and announce" warrant, Defendant Feathers kept in contact with Defendant

Chretien as he planned this matter and reviewed the final plan. Although that planning, included the

contingency plan of using a dynamic entry, Defendant Feathers made it clear that this was a "knock and announce" warrant and dynamic entry was simply a contingency.

"Simply going along with discretionary decisions made by one's subordinates . . . is not a delegation to them of the authority to make policy.." *Milligan-Hitt v. Board of Trustees of Sheridan County School Dist. No. 2,* 523 F.3d 1219, 1229 (10th Cir. 2008) (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 130, 1085 Sct. 915 (1988). Plaintiff is left with nothing more than bald-face allegations in regards to inadequate supervision. Again, it is evident that the record is absolutely devoid of any evidence which would support a claim for inadequate supervision. The facts of this matter suggest nothing else other than adequate supervision by Defendant Feathers and clearly, no proof of deliberate indifference.

## IV.
## Wyo. Stat. §§ 1-39-101 through 1-39-120, et seq:
## Tortious Conduct of a Peace Officer

In Wyoming, under the Wyoming Governmental Claims Act (WGCA), a governmental entity may be held liable for the tortious conduct of its peace officer while the peace officer is acting within the scope of his duties. Wyo. Stat. Ann. § 1-39-112 (LexisNexis 2009). However, an entity is not independently liable; it is only vicariously liable for the torts of its employees. *Sykes v. Lincoln County School Dist. No. 1 & 2*, 763 P.2d 1263, 1267 (Wyo. 1988).

In the Plaintiff's *Second Amended Complaint* she alleges that Defendant Feathers and the City of Powell should be liable for intentional infliction of emotional distress. This intentional infliction of emotional distress is based upon the alleged illegal or unconstitutional acts of the individual officers, which took place in the execution of the search warrant. It is the position of Defendant Feathers that he was not negligent as he had no participation in the execution of the search

warrant, nor was he aware in advance of any of the alleged unconstitutional or illegal acts of the

individual officers. The Plaintiff also claims that all these acts were done in the course and scope of

employment with the City of Powell and as such the City of Powell is vicariously liable.  However,

this claim must fail.

The City of Powell is only vicariously liable under WYO. STAT. § 1-29-112 if the individually

named Defendants  were acting within the scope of their duties. It is clear that the alleged

unconstitutional or illegal acts of the individual offices, as couched in the *Second Amended*

*Complaint* would not be acts within the scope of their duties.

> [L]iability for the tortious conduct of peace officers may only be imposed for conduct "while acting within the scope of their duties." Wyo. Stat. Ann. § 1-39- 112. In the instant case, not only is there no evidence that sexual assault of inmates was within the scope of the deputy's duties, it would be absurd to even suggest such a thing. *Kanzler v. Renner*, 937 P.2d 1337, 1345 (Wyo. 1997) (sexual misconduct never within the scope of any public officer's duties).

> *Boyer-Gladden v. Deputy Sheriff Bill Hill*, 224 P.3d 21, 29 (Wyo. 2010).

## CONCLUSION

For the foregoing reasons, the Defendants respectfully request that this Court grant summary

judgment to the Defendant City of Powell, and those officers named in their official capacity, as to

all counts.

**DATED** this 22nd day of December, 2010.

/s/ Thomas A. Thompson
Thomas A. Thompson, #6-2640
MacPherson, Kelly & Thompson, LLC
PO Box 999
616 W. Buffalo
Rawlins, WY 82301
(307) 324-2713
(307) 324-7348 - fax

## CERTIFICATE OF SERVICE

This is to certify that on the 22nd day of December, 2010, at Rawlins, Wyoming, I served the foregoing instrument by causing to be deposited a full, true and correct copy thereof in the United States Mail, duly enveloped with postage prepaid, and addressed to:

Jeffrey C. Gosman                          Misha Westby
Gosman Law Office                       Wyoming Attorney General's Office
P.O. Box 51267                              Herschler Building, 1st Floor West
Casper, WY 82601                          Cheyenne, WY 82002


/s/ Thomas A. Thompson
For MacPherson, Kelly, & Thompson, LLC

Mailed By:     hef