**SUBMITTED BY:**
JEFFREY C. GOSMAN
**GOSMAN LAW OFFICE**
PO Box 51267
Casper, WY 82601-2481
(307) 265-6715 (**fax.**)
(307) 265-3082 (ph.)

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| TRICIA WACHSMUTH, | CASE NO. **10 cv 041J** |
| Plaintiff, | |
| vs. | |
| City of Powell, and in their individual capacity, Tim Feathers, Chad Miner, Mike Chretien, Roy Eckerdt, Dave Brown, Mike Hall, Brett Lara, Matt McCaslin, Alan Kent, Matt Danzer, Officer Brilakis, Lee Blackmore, Cody Bradley, Kirk Chapman John Does #1 - #4 | |
| Defendants | |

### PLAINTIFF'S LIST OF UNDISPUTED AND DISPUTED FACTS

*Comes Now*, Plaintiff, by and through counsel Jeff Gosman of *GOSMAN LAW OFFICE* and submits his proposed List of Disputed and Undisputed Facts as follows:

### UNDISPUTED FACTS

1. Thirteen members of the Powell Police Department served a search warrant for a misdemeanor marijuana grow operation by dynamic entry upon the residence of Bret and Tricia Wachsmuth.

2. The Plaintiff and her husband had no prior criminal history, and no history of violence.

3. There was no indication that Bret or Tricia Wachsmuth were selling drugs.

4. The only specialized team of trained officers in Park County was the Park County Special Response Group under the direction of Lieutenant Patterson of the Park County Sheriff's Office.

5. The officers assisting in the dynamic entry to the Wachsmuth home had never done a dynamic entry as a team before in an operational setting.

6. The Powell Police Department had never deployed a flashbang device in an operational setting.

7. No one with the Powell Police Department was certified in the use of flashbang devices.

8. Officer Miner requested Lieutenant Patterson's assistance in preparing the search warrant.

9. Lieutenant Patterson has testified that he would not get his SRG team involved because the warrant had not been properly investigated and there was insufficient evidence that a threat to officer safety existed that would justify the use of his team.

10. Lieutenant Patterson has testified that he was told by Officer Miner that administration was on his ass to kick a door down.

11. Chief Tim Feathers was fully apprised of the method of service of the warrant, and approved the operation in its details.

12. Officer Miner of the Powell Police Department obtained a knock and announce warrant to search the Wachsmuth residence.

13. Sergeant Chretien of the Powell Police Department was assigned the duty of preparing the entry plan into the Wachsmuth residence.

14. Seargent Chretien planned for an entry team consisting of six members, one with a battering ram and five with long guns (semi-automatic assault rifles), one team to create a distraction at the back door by breaking a window, and one team to deploy a flashbang device.

15. The written plan was to knock and announce and immediately ram the door.

16. The officers had obtained intelligence beforehand that a young child was seen entering the residence, but had not been seen leaving the residence.

17. Bret Wachsmuth, the supposed threat to officers, was not home and his car was not in front of the house.

18. The officers approached the home and upon hearing a dog bark felt they were about to lose the element of surprise.

19. The officers quickened their pace to the door before the other two teams were in place.

20. The door was breached and the entry team entered the home.

21. The Plaintiff was sitting on a couch approximately four feet from the door and made eye contact with one of the officers before they entered.

22. The flashbang device was deployed in a window too high for Officer McCaslin to see into and the device landed on a bed.

23. The officers did not know the location of the child in the house.

24. The officers believed that if the door to the basement was unlocked that meant that some one was in the basement.

25. The door to the basement was unlocked.

26. The officers knew the door to the basement was unlocked.

27. The Plaintiff was used as a human shield to lead the officers into the uncleared basement after the officers learned that the basement door was unlocked.

28. The Plaintiff was seized immediately upon the officers entering the home, but was not handcuffed until after the house had been cleared and she had been used to lead the officers into the basement.

29. Officer Chretien later apologized to several Powell Police Officers for sending Tricia downstairs first in an uncleared area of the home.

30. Officer Hall thought that it was wrong to allow a person to be sent first in an uncleared area of the home.

31. When the officers found Bret Wachsmuth at his father's home, they left him unsecured for approximately five to ten minutes while they conversed with his family before taking him into custody.

32. There was no record of a small baggie containing cocaine residue logged into the evidence log prepared by the officer at the scene or the evidence log at the Powell Police Department.

33. Officer Miner had never used the Confidential Informant before, and spent a total of two

hours with him on the date in question.

## *DISPUTED FACTS*

1. The Plaintiff's husband was described as paranoid and a peeper by the Confidential Informant.

2. Officer Miner was informed by the Confidential that there were guns around the house, some of which were loaded and that Bret Wachsmuth sometimes carried a 22 caliber handgun.

3. The Powell Police Department requested the assistance of the Park County SRG team.

4. Most of the Powell Police Department had one basic course in police tactics.

5. While the officers state they practiced Dynamic entry techniques with their squads, the only documented inservice training provided by the Powell Police Department makes no mention of that training, and there were no certified trainers with the Powell Police Department, except in firearms.

6. Officer McCaslin's training for the flashbang device consisted of one police tactics course that provided basic instruction on a spectrum of police tactics, and he last deployed the device in 2005, three and one half years before the Wachsmuth warrant was served.

7. The flashbang device which landed on the bed, started a fire in the bedding.

8. Sergeant Eckerdt fabricated a story where he saw pictures of Bret Wachsmuth in SWAT gear with an assault rifle on his brother's MySpace page.

9. This information was not actually circulated at the time of the dynamic entry, but was created after the litigation was filed to bolster the evidence that Bret Wachsmuth posed an

<blockquote>

objective danger to police officers.

10. Defendant Brown attempted to intimidate Lieutenant Patterson before his, Patterson's, deposition in a manner that constituted witness tampering.

11. Bret Wachsmuth, while being interviewed at the Powell Police Station after the warrant was served, informed Officer Brown that the Confidential Informant told him he was turning him in to the police.

12. After learning of this information, Officer Miner claimed that the confidential informant told him the same thing, even though he didn't mention it to Patterson or Chretien before the warrant was served, and didn't include it in his affidavit for search warrant.

13. The officers planted a small bag containing cocaine residue into the evidence of the case, after the evidence was logged by the officer on the scene and after it was logged into evidence at the Powell Police Department.

14. Officer Miner requested that the Park County Sheriff's office provide its Special Response Group (SRG) to assist in the warrant service.

15. The officers did not knock and announce when they arrived at the Plaintiff's front door, but upon one of the officers making eye contact with the Plaintiff, immediately rammed the door without announcing their presence.

16. Tricia Wachsmuth was held at gunpoint from the time the officers entered the house until she was handcuffed approximately ten minutes later.

17. Tricia Wachsmuth was ordered to lead the officers down the stairs into the basement, while

</blockquote>

the entire entry team and the flashbang team, Kent and McCaslin followed.

18. The team trained their weapons on the Plaintiff as she led them down the stairs, and when she stopped on the stairs and turned, she could see the officers raise their weapons to their shoulders and point them at her head.

Wednesday, January 12, 2011.

Respectfully submitted,

_____-S-_____
JEFFREY C. GOSMAN
Plaintiff's Counsel
**GOSMAN LAW OFFICE**
PO Box 51267
Casper, Wyoming 82601
(307) 265-3082 (ph.)
(307) 265-6715 (fax.)

### *Certificate of Service*

I hereby certify that true and correct copies of the foregoing document was served this Wednesday, January 12, 2011 by ***e-submission*** to the following parties in interest:

| | |
|---|---|
| Misha Westby<br>Senior Assistant Attorney General<br>2424 Pioneer Avenue, 2nd Floor<br>Cheyenne, WY 82002<br>(307) 777-5477<br>(307) 777 8920 (f)<br>mwest@state.wy.us | Tom Thompson<br>MacPerson, Kelly & Thompson<br>P.O. 999<br>Rawlins, WY 82301-0999<br>(307) 324-2713<br>(307) 324-7348<br>tthompson@wyomingattorneys.net |

_____-S-_____
Jeff Gosman