**SUBMITTED BY:**
JEFFREY C. GOSMAN
**GOSMAN LAW OFFICE**
PO Box 51267
Casper, WY 82601-2481
(307) 265-6715 (**fax.**)
(307) 265-3082 (ph.)

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| TRICIA WACHSMUTH,<br><br>　　　　　　Plaintiff,<br><br>vs.<br><br>City of Powell, and in their individual capacity,<br>Tim Feathers, Chad Miner,<br>Mike Chretien, Roy Eckerdt, Dave Brown,<br>Mike Hall, Brett Lara, Matt McCaslin,<br>Alan Kent, Matt Danzer, Cody Bradley,<br>and Kirk Chapman.<br><br>　　　　　　Defendants | CASE NO. **10 cv 041J** |

### *PLAINTIFF'S MOTION IN LIMINE*

### TRIAL MEMORANDUM

This case arises under 42 U.S.C. § 1983 which provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction

thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law. . .

The elements of an action under this statute are 1) that a person 2) acting under color of state law 3) deprives Plaintiff of a federal right. Each of the Powell police officers was acting under color of law. There is no contest on that point, and a standard jury instruction on § 1983 liability addresses this issue. Each of the Defendants, including the City of Powell is a person as that term has been defined in the statute. The Plaintiff's federally protected rights arise under the 4th amendment safeguard against unreasonable search and seizure.

## *The Plaintiff has Requested Punitive Damages*

The Plaintiff has requested punitive damages for:

(1) the decision to ram the door immediately after announcing "police, search warrant,"
(2) the decision to deploy the flashbang in the bedroom window without being able to see where it was deployed, where a child was suspected of being present, and
(3) the decision to use Tricia Wachsmuth as a human shield.

Punitive damages are recoverable against individual capacity defendants under 42 U.S.C. § 1983 pursuant to *Smith v. Wade*, 103 S.Ct. 1625, *1640* (U.S. [CA 8] 1983). In that case, the Court stated: "We hold that a jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Id*. The threshold for awarding punitive damages is that the

individual defendant acted either with evil motive or intent, or simply reckless or callous indifference to the federally protected rights of others.

### Basis for Punitive Damage Claim for violating Knock and Announce

The Plaintiff believes that the admission in six different answers filed to the Plaintiff's complaint and amended complaints by the parties in their various capacities, that "***a primary team consisting of six officers, and five with long guns, were to announce 'police, search warrant' and if the door did not open immediately, the ram was to be used for entry***," can be taken as an admission that the plan was to deploy the battering ram if the door did not open immediately after announcing "police, search warrant." The only written account of the plan which was the police report filed by Sergeant Chretien, the team leader, stated that "***the plan was to knock on the front door and announce 'police, search warrant'. If the door did not open immediately, we would use the ram to force entry***." The raid plan notes prepared by Marissa Torczon also described an entry based on knocking and ramming the door without an interval. Of course, the testimony of the Plaintiff is unequivocal, that no one knocked, let alone waited a reasonable time before the door was rammed.

As the Court has pointed out, this was a knock and announce warrant. The court has found as a matter of law that there were no exigent circumstances. If the plan was to immediately ram the door after announcing "police, search warrant" it was a deliberate violation of the Plaintiff's fourth Amendment rights, and supports a claim for punitive damages against the officers listed below who planned it and the officers who directly carried it out. Their actions were clearly reckless or callously indifferent to Plaintiff's

federally protected rights under the knock and announce rules of the 4th amendment.

Plaintiff does not seek punitive damages against those officers who merely acquiesced in the entry plan as part of the backyard distraction team and who got hung up on the fence during the raid and were unable to perform their distraction duties. They are Officer Brown, Officer Lara, and Officer Bradley. Nor does Plaintiff seek punitive damages on this claim against Officer McCaslin, who was not present when the no knock entry was effected. Plaintiff does seek punitive damages on this claim against the raid planners, Feathers, Chretien and Kent.

### *Punitive Damages for Deploying the Flashbang*

To provide some context for this claim, the North East bedroom window, where the flashbang device was deployed was 5 feet 9 inches from the ground to the window sill. Officer McCaslin is approximately 5 feet 10 inches tall, and his testimony was that he was standing a few feet back from the window when he deployed the device. It was dark outside and it was dark inside, he had no illumination such as a flashlight. He couldn't tell where the device was deployed because the window was high up, it was above his eye level. The device landed on the bed, burned nearly through a pillow on the bed, damaged the bedding and burned into the mattress. Had someone been sleeping on the bed, the device probably would have killed or seriously injured them.

One of the principal reasons for using the SWAT style entry to was protect the young child thought to be in the residence. Officer Kent and McCaslin both testified that they did not know where the child was. Deployment of this device by Officer McCaslin and

Sergeant Kent into the darkened bedroom window nearly six feet off the ground was done in reckless disregard or callous indifference to the federally protected rights of the Plaintiff. This claim for punitive damages is against Sergeant Kent, and Officer McCaslin.

### *Punitive Damages Against the Officers Using the Plaintiff as a Human Shield*

Officer Chapman alerted Sergeant Chretien that the door to the basement was unlocked as the officers prepared to clear that area of the home.  The officers were aware that if the door was unlocked, that meant someone was downstairs in the basement.  The officers had assembled a SWAT style team to go into this house because of their fear of Bret Wachsmuth.  Sergeant Chretien, then ordered the Plaintiff to get off the couch and lead the officers down the stairs.  They followed her down the stairs with their guns at the ready position, and when she stopped on the stairs they all raised their weapons to the weapon position and pointed them at her head and torso.  These actions were a clearly deliberate effort to place Tricia in harm's way as a shield between the officers and the suspect.

The Court has concluded that the use of the Plaintiff as a human shield was unconscionable.  It was so egregious that it violated clearly established law regarding excessive force, even though no specific precedent for use of a human shield has been found.  This conduct is patently callous and recklessly indifferent to the federally protected rights of the Plaintiff and honestly appears to have been motivated by an evil desire to terrorize the Plaintiff as they had no valid purpose to fulfill by forcing her to go before them, guns drawn, into the basement.  The Defendants who were involved in this action were

Sergeant Chretien,  Sergeant Kent, Sergeant Eckerdt, Officer Chapman, Officer Danzer, Officer Hall,  Officer McCaslin, and Officer Miner.

### *MATTERS THAT ARE UNCONTESTED*

There are several issues that are not contested at this point, which the trial court should bear in mind.  The Defendants were all acting under color of law at the time the events in question occurred.  Chief Timothy Feathers, by admission of the City of Powell in its brief in support of the motion for summary judgment is admittedly final decision maker for the Powell police department.  Lastly, the Court in its summary judgment order found that there were no exigent circumstances that developed at the time the warrant was served.

### *MUCH OF THE CRITICAL EVIDENCE IN THIS CASE IS NOT CONTESTED*

The Defendants' documentation demonstrates that the warrant service was planned as a no knock warrant.  The witnesses now say that was simply inaccurate.  The Defendants have testified in their depositions however that the wait at the door was at the longest five to ten seconds, with the only other actual estimate being 5-6 seconds, clearly not long enough under Tenth Circuit precedent for a knock and announce warrant where there were no exigencies.  The Defendants' best evidence, which is certainly disputed, is that Tricia Wachsmuth had moved no more than three feet from the time of the knock and announce until the door was rammed.  That movement could easily have occurred in less than three seconds. Tricia and most of the officers testified that she was still sitting on the couch when the officers entered the house and took control of her.  Thus, in a light most

favorably cast for the Defendants, the wait of 5-10 seconds without exigent circumstances is legally insufficient to support the requirement of reasonableness under the 4th Amendment.

McCaslin and Kent have already admitted that the window to the bedroom where the flashbang was thrown, was too high for them to see into, and it was too dark for them to see into. Chretien stated that the only change in his report was that McCaslin couldn't see in the window. No one knew the location of the child in the house, and McCaslin and Kent have admitted that they did not know where the child was located. The factual circumstances surrounding the deployment of the flashbang permit no room for an argument that the officers' actions were reasonable.

Even giving the Defendants the benefit of the doubt, everyone admits that Tricia Wachsmuth went down the stairs first. Officer Hall has admitted that Chretien apologized to him for sending Tricia into an uncleared area. Officer Danzer heard Chretien tell Tricia she was going downstairs, and Chretien himself admits he said it, but that it was a bluff. Whether it was a bluff or not, Tricia responded to what she perceived, and she alone could perceive, as an order and went downstairs ahead of the officers, none of whom made any effort to stop her. This evidence reduces the argument that the Plaintiff was not used as a human shield to the narrowest of margins.

Plaintiff will move for a judgment as a matter of law pursuant to Rule 50 at the close of the evidence on some or all of these issues.

## *The Liability Flow Chart*

1. **Raid Plannning**:

    1. Chief Timothy Feathers, final policy maker for the City of Powell Police Department,
    2. Sergeant Chretien.

2. **Review of the raid plan by the Officers that were Tasked with Carrying it Out**:

    1. Sergeant Eckherdt,
    2. Officer Bradley,
    3. Officer Brown,
    4. Officer Chapman,
    5. Officer Danzer,
    6. Officer Hall,
    7. Officer Miner,
    8. Officer Lara, and
    9. Officer McCaslin.

3. **The Entry Team.**

    1. Sergeant Chretien,
    2. Sergeant Eckerdt,
    3. Officer Chapman,
    4. Officer Danzer,
    5. Officer Hall,
    6. Officer Miner.

4. **The Flashbang Team.**

    1. Sergeant Kent,
    2. Officer McCaslin.

5. **The Backdoor Distraction Team.**

    1. Officer Brown,
    2. Officer Bradley,
    3. Officer Lara.

6. **The Officers that were in the House when Tricia was Forced Down the Stairs.**

    1. Sergeant Chretien,
    2. Sergeant Kent,
    3. Sergeant Eckerdt,
    4. Officer Chapman,
    5. Officer Danzer,
    6. Officer Hall,
    7. Officer Miner,
    8. Officer McCaslin.

### *Putting Some Specificity in the Jury Instruction Involving Failure to Knock and Announce*

Sometime between the filing of the last answer in August of 2010, and the taking of depositions beginning in October of 2010, the Defendants became aware that ramming a door down without allowing the homeowner a reasonable period of time to answer it on a knock and announce warrant violates the constitution. Thus, there has been quite a scramble among the Defendants to correct the problem with their documentation, including six answers to complaints and amended complaints, which clearly states no such allowance was planned.

Chief Feathers announced the defense strategy, in his deposition, when he declared that he and Chretien agreed that the word immediately meant wait a reasonable period of time. Ms. Westby commented in the Final Pre-Trial Conference that the word immediately meant that there would be no intervening action taken by the police officers before the door was breached. Words of common, everyday usage are being turned upside down to mean

the opposite of how we understand them.

The Plaintiff believes that some specificity should be supplied to the jury that failure to knock and announce or immediate entry without waiting a reasonable period of time are violations of the Fourth Amendment. It is clear from the case law that a wait of three seconds or less is unreasonable and, in fact, constitutes an immediate entry. *U.S. v. Moore*, 91 F.3d 96 (CA 10 [KA] 1996). A wait of 5-10 seconds was held unreasonable under the circumstances in *U.S. v. Gallegos*, 314 F.3d 456 (CA 10 [UT] 2002). A wait of ten seconds has been upheld in the specific circumstances of *U.S. v. Myers*, 106 F.3d 936 (CA 10 [KA] 1997); and ten to twelve seconds in *U.S. v. Knapp*, 1 F.3d 1026 (CA 10 [CO] 1993). In *U.S. v. Jenkins*, 175 F.3d 1208 (CA 10 [KA] 1999), the Court found a 14-20 second wait reasonable, but noted that a blanket policy of waiting ten seconds would not comport with Supreme Court and Circuit precedent. In *U.S. v. Gallegos*, 314 F.3d 456 (CA 10 [UT] 2002), the court held that a review of Circuit decisions showed that a wait of less than ten seconds had never been upheld in the absence of exigent circumstances.

The Plaintiff's jury instructions set out some of these holdings to provide limits or boundaries to the Defendants' wait time. Most of the Officers, the Court will learn during the course of the trial, refused to comment on the lapse of time from the alleged knock and announce and the longest period mentioned was between five and ten seconds, suggested by Officer Miner. Officer Chapman suggested it was more like 5-6 seconds. Under any of

these scenarios, given that there were no exigent circumstances as would be recognized at law, the time was legally insufficient to support compliance with knock and announce rules.

### *Damages for Failure to Knock and Announce or Wait a Reasonable Time*

The damages flowing from this claim are the physical damages to the home, and the emotional distress and loss of enjoyment of life claims.

### *Damages for Excessive Force in the Deployment of the Flashbang*

The damages which flow from the deployment of this device are the damage to the bed, and the bedroom, and any emotional distress related directly to the detonation of the device at the time the officers breached the door.

### *Use of the Plaintiff as a Human Shield*

The damages which flow from this action are related to the emotional distress and loss of enjoyment of life claims.  Plaintiff proposes that if the jury finds that the entry into the home was planned in violation of the knock and announce rules, then the jury should make one finding of damages for all claims that might follow. (This is consistent with the verdict form Plaintiff has supplied with her proposed instructions).

If the jury does not find that the entry was planned in violation of the 4th amendment or that the officers knocked, announced their presence and waited a reasonable time, then the jury may apportion damages between any other constitutional violation they find. (This is again consistent with the verdict form Plaintiff has supplied).

### *Plaintiff's Verdict Form*

Plaintiff has supplied a verdict form with the following sequence.

1. Did the officers on the entry team enter the home without waiting a reasonable period of time.
2. Did Chretien plan the entry to ram the door without waiting for the homeowner to answer and did Feathers approve that plan.
3. Were the officers who carried out the plan aware of the plan.
4. What are the damages that were proximately caused by the failure to wait a reasonable time.
5. Did Kent and McCaslin deploy the flashbang without being able to see into the room.
6. What damages flow from any constitutional violation in the deployment of the flashbang.
7. Was Tricia Wachsmuth used as a human shield.
8. Who was involved in that constitutional violation.
9. What damages flow from that constitutional violation.
10. Did any of defendants act with reckless disregard for the Plaintiff's federally protected rights such that it would support an award of punitive damages and what is that award in the case of each defendant.

Friday, February 11, 2011.

Respectfully submitted,

_____-S-_____
JEFFREY C. GOSMAN
Plaintiff's Counsel
**GOSMAN LAW OFFICE**
PO Box 51267
Casper, Wyoming 82601
(307) 265-3082 (ph.)
(307) 265-6715 (fax.)

*<u>Certificate of Service</u>*

I hereby certify that true and correct copies of the foregoing document was served this Friday, February 11, 2011 by ***e-submission*** to the following parties in interest:

| | |
|---|---|
| Misha Westby<br>Senior Assistant Attorney General<br>2424 Pioneer Avenue, 2nd Floor<br>Cheyenne, WY 82002<br>(307) 777-5477<br>(307) 777 8920 (f)<br>mwest@state.wy.us | Tom Thompson<br>MacPerson, Kelly & Thompson<br>P.O. 999<br>Rawlins, WY 82301-0999<br>(307) 324-2713<br>(307) 324-7348<br>tthompson@wyomingattorneys.net |

_____*-S-*_____
Jeff Gosman