**SUBMITTED BY:**
JEFFREY C. GOSMAN
**GOSMAN LAW OFFICE**
PO Box 51267
Casper, WY 82601-2481
(307) 265-6715 (**fax.**)
(307) 265-3082 (ph.)

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| TRICIA WACHSMUTH,<br><br>                    Plaintiff,<br><br>vs.<br><br>City of Powell, and in their individual capacity,<br>Tim Feathers, Chad Miner,<br>Mike Chretien, Roy Eckerdt, Dave Brown,<br>Mike Hall, Brett Lara, Matt McCaslin,<br>Alan Kent, Matt Danzer, Cody Bradley,<br>and Kirk Chapman.<br><br>                    Defendants | CASE NO. **10 CV 041J** |

***PLAINTIFF'S RULE 50 MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT AND RULE 59 MOTION FOR NEW TRIAL***

**Comes Now**, Plaintiff, by and through counsel Jeff Gosman of *GOSMAN LAW OFFICE* and moves the Court for Judgment Notwithstanding the Verdict pursuant to Rule 50 and a Motion for New Trial pursuant to Rule 59 FRCP.

### ***The Rule 50(b) Motion***

1.  Plaintiff requests entry of judgment notwithstanding the verdict against Officers Danzer, Chapman, and Miner for failure to prevent Chretien from using Plaintiff as a human shield.

    Officer Danzer testified at trial that he heard Chretien tell "Tricia to go down" the stairs. Chapman was within a foot or two of Danzer when that statement was made and testified there was nothing wrong with his hearing. There is no evidence that there were other noises or distractions that would have prevented Chapman from hearing what Danzer heard. Both Officer Danzer and Officer Chapman have testified that the Plaintiff stopped on the stairs and they permitted her to go ahead. Officer Miner who, in his diagram of the time frame during which Tricia was sent down the stairs, positioned himself in nearly the same spot Chretien claims he positioned himself, heard Chretien say "you first" to Tricia before she went down the stairs.

    Chapman, Danzer and Miner were in a position to reach out and stop Tricia from going downstairs, each certainly was in a position to prevent the constitutional violation from occurring.

    The jury found that Sergeant Eckerdt who was in no better position to hear the command of Chretien than the other officers, did hear, and failed to respond. This feature of the verdict bolsters the Plaintiff's position that those officers who heard Chretien order the Plaintiff to go first and who had a clear opportunity to

prevent that from happening have violated their duty to prevent constitutional violations which occurred in their presence.

The evidence on this issue is subject to only one reasonable interpretation. If Officer Miner, and Danzer heard the command as they have testified, and if these officers were in position to prevent Tricia from leading them downstairs, as they have further testified, they were in a position to prevent the constitutional violation from occurring. *Riggs v. Scrivner, Inc.*, 927 F.2d 1146, *1149* (CA 10 [W.D. OK] 1991).

Officer Chapman should not be permitted to avoid liability simply by denying he heard what was clearly spoken within earshot and which another officer standing a couple of feet away heard.  Officer Chapman's credibility was impeached by his testimony, and his actions in allowing Tricia to move past him to the basement door, open it and lead the officers downstairs while he stood by provides no credible alternative to his participation in Chretien's order that the Plaintiff "go first."

A judgment notwithstanding the verdict is appropriate if the evidence, ". . . viewed in the light most favorable to the nonmoving party, 'points but one way and is susceptible to no reasonable inferences supporting' the nonmoving party. (Citation omitted). *Riggs v. Scrivner, Inc.*, 927 F.2d 1146, *1149* (CA 10 [W.D. OK] 1991).

2. Plaintiff requests entry of judgment notwithstanding the verdict against

Sergeant Kent, Officer McCaslin and Officer Hall for failure to prevent Chretien from using Plaintiff as a human shield. Kent and McCaslin were in the small bedroom during the period that Chretien ordered the Plaintiff downstairs and while not in the path to prevent her from going downstairs, could have called out in an effort to prevent this violation of the Fourth Amendment.

Officer Hall admitted that he heard Chretien's command from the master bedroom "Then you can go first." He was within a few feet of Sergeant Chretien when the command was given. He clearly had the opportunity to speak up and attempt to prevent the constitutional violation from occurring. There is no reasonable interpretation of the evidence that would hold Hall, who heard the declaration by Chretien that the Plaintiff go first, who declared to others he felt he should have done something to stop her, and who had merely to call out that the Plaintiff should not lead the officers downstairs, free from liability for failing to prevent the constitutional violation.

McCaslin and Sergeant Kent, while denying they heard anything were closer to Chretien than any of the other officers, standing just a few feet away from him in the small bedroom, as he stood in the hallway, and they have offered no explanation for failing to hear what was spoken. McCaslin and Kent should not benefit from a convenient declaration they didn't hear what was plainly spoken within a few feet of where they were standing. Officer McCaslin and Sergeant Kent had a duty to speak

up and declare that Trcia should be stopped before she went downstairs.

3. Plaintiff requests entry of judgment notwithstanding the verdict against Sergeant Kent and Officer McCaslin for deploying the flashbang device without looking and without knowing whether any occupants of the home, including the small child believed to be in the home, were present in the room where the device was deployed. Special interrogatory No. 15 stated: "Did Defendants Sergeant Kent and Officer McCaslin look into the master bedroom before deploying the flashbang device in a manner that the device would not risk injury?" This interrogatory was answered in the negative by the jury. The Order on Summary Judgment made it clear that the constitutional standard was whether the officers looked into the bedroom and were able to see where the device was being deployed, particularly in circumstances where a young child may have been present. Furthermore, deploying the device directly onto the pillows on the bed, shows disregard for the safety of the occupants of the home, and had someone been sleeping or even curled up fearfully in bed as the officers entered the house they would have been seriously injured. The Tenth Circuit has established limits on the use of a flashbang device which were violated in this case as shown by special interrogatory No. 15. *U.S. v. Myers*, 106 F.3d 936, *940* (CA 10 [KA] 1997). *Kirk v. Watkins*, 1999 WL 381119, *p 4* (CA 10 [OK] 1999).

The evidence in this case can lead to only one conclusion, neither Kent nor

McCaslin could see inside the darkened bedroom that night, neither one of them knew where the device would land, neither one of them knew who or what was in the area where the device would detonate. The evidence is capable of only one realistic interpretation, and a judgment notwithstanding the verdict should be entered against Sergeant Kent and Officer McCaslin. *Riggs v. Scrivner, Inc.*, 927 F.2d at *1149*.

4. Plaintiff requests entry of judgment notwithstanding the verdict against Sergeant Chretien and the officers comprising the entry team by and for the reason that no objectively reasonable officer could have believed that the occupant of the residence had a reasonable time to come to the door. The body of the evidence in this case showed the Plaintiff still sitting on the couch after the entry into the home, and that she had not moved since being observed by the officers on the front porch. An objectively reasonable officer would have seen that Tricia Wachsmuth did not move from the couch in the interim from knocking and entry into the home, and if she didn't have time to move, she certainly didn't have time to answer the door.

Even taking the testimony of officer Chapman as the basis for this analysis, Tricia moved only two or three feet from the couch by the time he was in the house and had seized control of her. This distance did not allow for sufficient time for Tricia to answer the door. [W]here there are no exigent circumstances justifying a shorter interval, the central inquiry in conducting this determination is whether an objectively

      reasonable officer would believe that occupants of the residence had a reasonable opportunity to voluntarily admit the officer, thereby supporting a conclusion that the occupants refused admittance. *U.S. v. Gallegos*, 314 F.3d 456, *459* (CA 10 [UT] 2002). Plaintiff also argues that the law of the Tenth Circuit is that a wait of 3 seconds or less is presumptively unreasonable. This argument is set out more fully below.

5. The Plaintiff seeks a judgment notwithstanding the verdict on the issue of the plan of the Defendant Chretien and the approval of Chief Feathers to enter the home immediately upon knocking and announcing. The basis for this motion is that the interpretation given by Chief Feathers that Chretien told him that immediately meant "wait a reasonable period of time," is not credible. Where the evidence is capable of only one reasonable interpretation, the granting of a judgment notwithstanding the verdict is appropriate. *Riggs v. Scrivner, Inc.*, 927 F.2d at 1149.

### The Rule 59 Motion for New Trial

1. Plaintiff requests a new trial on the issue of the liability of the individual officers for their actions in planning an immediate entry into the Wachsmuth residence after knocking and announcing, for being briefed on such a plan and failing to object, and for official capacity liability for approving such a plan. Plaintiff's basis for this motion is the erroneous Instruction No. 18 which converted the element of deprivation of Plaintiff's constitutional rights into a specific intent to deprive plaintiff of constitutional

rights. While this instruction was corrected over 24 hours later, the damage was done. Furthermore, Plaintiff contends that the corrective instruction was too similar to the one it replaced, and did not clarify that intentional violation of Plaintiff's rights was not the standard. In any event, the jury had moved on and Plaintiff's case, built around the incompetence of Chretien and Feathers in approving a plan that violated the Fourth Amendment, was impossible to prove under the instructions given.

There is no intent element in § 1983. The Court in *Monroe v. Pape*, 81 S.Ct. 473, **484** (US [CA 7] 1961) made clear that § 1983

> The word 'wilfully' does not appear in s 1979. Moreover, s 1979 provides a civil remedy, while in the Screws case we dealt with a criminal law challenged on the ground of vagueness. Section 1979 should be read against the background of tort liability that makes a man responsible for the natural consequences of his actions.

In *Parratt v. Taylor*, 101 S.Ct 1908, **1912-3** (US [CA8] 1981) the Court addressing the finding in *Monroe v. Pape* stated that:

> Both *Baker v. McCollan* and *Monroe v. Pape* suggest that § 1983 affords a "civil remedy" for deprivations of federally protected rights caused by persons acting under color of state law without any express requirement of a particular state of mind. Accordingly, in any § 1983 action the initial inquiry must focus on whether the two essential elements to a § 1983 action are present: (1) whether the conduct complained of was committed by a person acting under color of state law; and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States.

*Parratt v. Taylor*, 101 at 1912.

In *Daniels v. Williams*, 106 S.Ct. 662, **664** (US [CA 4] 1985), the Supreme Court overruled *Parratt v. Taylor* as it applied to substantive due

process claims but reiterated the holding of **Parratt** as it applies to other § 1983 claims.

These cases make clear that where there are no claims for substantive due process, or discrimination under the Equal Protection Clause, or claims under the 8th amendment, there is no intent requirement beyond that which would establish that the actor intended the consequences of his own actions.

The facts of this case clearly involve the allegations that the Defendants did not know they were violating the constitution and did not need to know that they were specifically violating the constitution when they wilfully and purposefully committed the acts upon which Plaintiff bases her claim.

A motion for a new trial neither requires nor even envisions that the court view the evidence in a light most favorable to the non-movant. Instead, a new trial may be granted if the district court concludes the "claimed error substantially and adversely" affected the party's rights. **Henning v. U.P. R.R. Co.**, 530 F.3d 1206 (CA 10 [E.D. OK] 2008). In this case, the Plaintiff argues that the erroneous jury instruction was both substantive and adverse to the Plaintiff's rights, because it changed the nature of the cause of action to require a specific intent to violate the constitution.

2. Plaintiff further seeks a new trial on the specific issue of whether the officers waited a reasonable time before entering the home. The jury instruction on knocking and

announcing, Jury Instruction No. 26, gave no guidance on the amount of time necessary to meet the minimum standard set by the Tenth Circuit. That standard, first announced in *U.S. v. Moore*, 91 F.3d 96 (CA 10 [KA] 1996), is that a wait of three seconds or less is the same as an instantaneous breach of the door, and violates the knock and announce rule for allowing the homeowner or occupant a reasonable amount of time to answer the door. That minimum standard has been recognized in a district court opinion in the context of § 1983 liability in the case of *Hernandez v. Conde*, 442 F.Supp.2d 1141, *1156* (D.Ct. KA) 2006). That standard has been reiterated in a Tenth Circuit case involving suppression of evidence; *U.S. v. Jenkins*, 175 F.3d 1208, *1213* (CA 10 [KA] 1999).

While there is no bright line rule, the Supreme Court in *U.S. v. Banks*, 124 S.Ct. 521 (U.S. [CA 9] 2003), pointed out that the Circuits have had no trouble placing boundaries on what is a reasonable time frame for cases involving similar facts.

> Courts of Appeals have, indeed, routinely held similar wait times to be reasonable in drug cases with similar facts including easily disposable evidence (and some courts have found even shorter ones to be reasonable enough).

*U.S. v. Banks*, 124 S.Ct. at *526*.

There is no rule against instructing the jury that a wait of 3 seconds or less is essentially instantaneous and absent exigent circumstances violates the Fourth Amendment. In the absence of exigent circumstances, a wait of three seconds is

presumptively unreasonable under Tenth Circuit law and the jury should have been so instructed.

The failure to instruct the jury that a wait of three seconds or less was unreasonable prejudiced the Plaintiff. The Plaintiff's case was built around two scenarios. The Plaintiff's testimony that the officers did not knock and announce, was one. The Plaintiff's second scenario was that the Defendants' did knock and announce, but did not wait a reasonable amount of time to enter. This second theory of the evidence was bolstered by the statement in Chretien's report that the plan was to immediately breach the door after knocking and announcing. The Defendants defended their position by claiming that, while most of them didn't remember how long they were at the door, it was a reasonable time. Under the instruction given, the jury was permitted to conclude that the officers waited a reasonable period of time, even if they did immediately ram the door as no wait at all could have been reasonable under the instruction given. Several officers testified that the wait seemed interminable because of the fear that the suspect was arming himself. Thus, the jury was empowered by the Defendants' evidence to find that whatever the officers felt was reasonable was constitutional. But, in fact, the officers are not permitted to ram the door before the homeowner has the opportunity to answer it, in the absence of exigent circumstances, and an instruction that did not instruct as to minimum wait times, where no exigent circumstances existed, violates

      Fourth Amendment law on the reasonableness of the wait.

3.      Plaintiff renewed her motion in limine to exclude evidence of the materials seized in the search and to limit introduction of evidence of the Plaintiff's drug usage. The Defendants then introduced most of their evidence to demonstrate the Plaintiff and her husband's drug use. This evidence was prejudicial under Rule 403 and did not aid in the resolution of any element of the defense of the Plaintiff's case. It allowed the Defendants to focus on the Plaintiff's wrongdoing, which was irrelevant to the claims the jury was to decide. The first question is whether the evidence should have been admissible. The Plaintiff argues that the evidence was not relevant to any claim or defense. Plaintiff objected at trial to the introduction of this evidence. Where the evidence was or should have been excluded, and the evidence had the ability to prejudice the rights of the Plaintiff, a new trial should be granted. *Sanjuan v. IBP*, 160 F.3d 1291, *1297* (CA10 [KA] 1998).

      **Wherefore**, Plaintiff prays for judgment notwithstanding the verdict and/or for a new trial as set out above.

      Saturday, March 12, 2011

.      Respectfully submitted,

      _____-S-_____
      JEFFREY C. GOSMAN
      Plaintiff's Counsel
      **GOSMAN LAW OFFICE**
      PO Box 51267
      Casper, Wyoming 82601
      (307) 265-3082 (ph.)
      (307) 265-6715 (fax.)

*Certificate of Service*

I hereby certify that true and correct copies of the foregoing document was served this Saturday, March 12, 2011 by *e-submission* to the following parties in interest:

| | |
|---|---|
| Misha Westby<br>Senior Assistant Attorney General<br>2424 Pioneer Avenue, 2nd Floor<br>Cheyenne, WY 82002<br>(307) 777-5477<br>(307) 777 8920 (f)<br>mwest@state.wy.us | Tom Thompson<br>MacPerson, Kelly & Thompson<br>P.O. 999<br>Rawlins, WY 82301-0999<br>(307) 324-2713<br>(307) 324-7348<br>tthompson@wyomingattorneys.net |

_____-S-_____
Jeff Gosman