Gregory A. Phillips
Wyoming Attorney General

John Renneisen
Deputy Attorney General

Misha Westby – WY Bar No. 6-2826
Cathleen D. Parker –WY Bar No. 6-3236
Senior Assistant Attorney General
2424 Pioneer Ave., 2nd Floor
Cheyenne, WY 82002
T: (307) 777-5457
F: (307) 777-8920
E: mwestb@state.wy.us'

Attorneys for Individual Defendants

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| Tricia Wachsmuth, | ) | |
| | ) | |
| Plaintiff, | ) | 10-CV-041-J |
| | ) | |
| vs. | ) | |
| | ) | |
| City of Powell, Tim Feathers, Chad Miner, | ) | |
| Mike Chretien, Roy Eckerdt, Dave Brown, | ) | |
| Mike Hall, Brett Lara, Matt McCaslin, | ) | |
| Alan Kent, Matthew Danzer, Officer Brilakis, | ) | |
| Lee Blackmore, Cody Bradley, Kirk Chapman, | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW
## OR IN THE ALTERNATIVE FOR A NEW TRIAL
## BASED ON QUALIFIED IMMUNITY

Defendants Sgt. Chretien and Sgt Eckerdt, by and through the Office of the Attorney General of the State of Wyoming, hereby file their Motion for Judgment as a Matter of Law or in the Alternative for a New Trial Based on Qualified Immunity.

## *RELEVANT EVIDENCE PRODUCED AT TRIAL*

The Following relevant testimony was established during the trial of this matter:

a. Sgt. Chretien was assigned to organize the execution of the search warrant on the Wachsmuth residence.

b. The information provided by the CI and relied on in analyzing the manner of executing the search warrant was as follows:

- the Wachsmuths had a marijuana grow operation with 10-20 plants;

- the Wachsmuths exhibited paranoid behavior;

- the Wachsmuths were always "peeping" out the windows looking for law enforcement;

- there were several loaded weapons left lying around the house and Bret Wachsmuth sometimes carried a loaded .22 caliber pistol on his person;

- there was armor piercing ammunition in the home;

- Tricia's mother sent prescription medications mostly oxycodone and valium and the Wachsmuths crushed up the pills and injected or smoked the powder;

- The CI had warned them that they had been turned into the police.

c. After knocking, announcing and waiting a reasonable amount of time, the officers on the entry team entered the house and fanned out to secure the residence. Officer Eckerdt stayed with Tricia Wachsmuth during this process.

d. The Plaintiff as well as the Defendants who were present in the home and heard the exchange testified that Sgt. Chretien asked Tricia if anyone was downstairs and

when she hesitated asked her again. In an effort to determine whether or not she was telling the truth, Sgt. Chretien called her bluff and said something to the effect of "then you can go first."

   e. Sgt. Chretien testified that he expected a verbal response and Sgt. Eckerdt agreed that this appeared to be an attempt to call the Plaintiff's bluff and anticipated a verbal response.

   f. Tricia Wachsmuth surprised both officers by getting up and going to the basement stairs. After she reached the stairs she opened the door went down a couple of steps turned on the light and said "see, no one is down here."

   g. Sgt. Chretien went downstairs after Tricia following Officers Danzer and Hall.

   h. Sgt. Eckerdt did not go downstairs with the Plaintiff and the other Officers.

## *LAW AND ANALYSIS*

### STANDARD OF REVIEW

A court can grant judgment as a matter of law when "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." FED. R. CIV. P. 50(a). Motions brought under FED. R. CIV. P. 50 "test whether there is a legally sufficient evidentiary basis for a reasonable jury to find for the moving party." *Ruyle v. Continental Oil Co.,* 44 F.3d 837, 841 (10th Cir. 1994) "A party is entitled to judgment as a matter of

law only if all of the evidence, viewed in the light most favorable to the nonmoving party, reveals no legally sufficient evidentiary basis to find for the nonmoving party." *Burrell v. Armijo,* 603 F.3d 825, 832 (10th Cir. 2010) (citing *Hurd v. Am. Hoist & Derrick Co.,* 734 F.2d 495, 499 (10th Cir.1984) (judgment as a matter of law may be entered "only if the evidence is such that without weighing the credibility of the witnesses the only reasonable conclusion is in [the moving party]'s favor")). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial'" *Scott v. Harris*, 550 U.S. 372, 380 (2007) (*quoting, Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

**QUALIFIED IMMUNITY**

The Tenth Circuit in *Gonzales v. Duran*, 590 F.3d 855 (10th Cir. 2009), recently reiterated the process for a determination in a jury trial of the legal issues presented by the objectively reasonable standard.

> Second, in deciding whether a right is clearly established, an essential part of the qualified immunity inquiry, a court must assess whether the right was clearly established against a backdrop of the objective legal reasonableness of the actor's conduct. *Keylon,* 535 F.3d at 1218. Letting the jury determine whether the officer's actions were reasonable in light of the clearly established law has the potential of asking the jury to resolve a legal question.

*Id.* at 860. This Court presented special interrogatories to the Jury and stated its intention to rule on the issue of qualified immunity based on those responses.

Based on the testimony and evidence set forth in Plaintiff's case, the Defendants renew their motion for judgment on the basis of qualified immunity. The two-prong qualified immunity analysis has evolved since its rationalization in *Harlow v. Fitgerald*, 457 U.S. 800 (1982). In *Harlow*, the Supreme Court explained that government officials performing discretionary functions are generally shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Id.* at 817-18.

The United States Supreme Court revisited qualified immunity in the context of Fourth Amendment excessive force claims. In *Scott v. Harris*, the Court restated the analysis as follows:

> In resolving questions of qualified immunity, courts are required to resolve a "threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? This must be the initial inquiry." If, and only if, the court finds a violation of a constitutional right, "the next, sequential step is to ask whether the right was clearly established...in light of the specific context of the case."

*Scott v. Harris*, 550 U.S. 372, 377 (2007)(*quoting Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

In 2009, the Supreme Court again addressed qualified immunity in the context of the Fourth Amendment. *Pearson v. Callahan*, 129 S.Ct. 808 (2009). The Supreme Court held that the mandated two-step procedure was no longer mandatory: "while the sequence set forth therein is often appropriate, it should no longer be regarded as mandatory in all

cases." *Id.* at 811. Regardless of the order of application, the court should grant judgment as a matter of law based on qualified immunity because Plaintiff has failed to satisfy either part of the two-part inquiry. As discussed below, Plaintiff has not established excessive force in violation of the Fourth Amendment and judgment in favor of Sgt. Chretien and Sgt. Eckerdt is appropriate because a reasonable officer would not have known that the conduct was clearly unlawful.

**JURIES FINDING OF CONSTITUTIONAL VIOLATION**

The Jury found that Sgt. Chretien and Sgt. Eckerdt violated the Plaintiffs Constitutional rights on the claim of "human shield." The Fourth Amendment does not pertain to "unintended consequences of government action" or to "accidental effects of otherwise lawful government conduct." *Brower v. County of Inyo*, 489 U.S. 593, 596-597 (1989). Rather, a Fourth Amendment seizure occurs "only when there is a governmental termination of freedom of movement *through means intentionally applied.*" *Id*. at 597 (emphasis in original); see also*, County of Sacramento v. Lewis*, 523 U.S. 833, 843-845 (1998). The evidence is consistent that Sgt. Chretien was simply trying to determine the veracity of the Plaintiff's statement that no one was downstairs and there was no intention to use the Plaintiff as a human shield. In fact, the Officers went around the Plaintiff as soon as they could and Officer Danzer was the first person into the basement. Sgt. Eckerdt also interpreted Sgt. Chretien's discussion as calling her bluff and was simply caught off guard when the Plaintiff got up and headed down stairs.

At most, this was an unexpected consequence of sanctioned actions by the Officers and there is no evidence that there was an intentional action that violated the Plaintiff's constitutional rights.

In addition, the Plaintiff admits that she told Officers no one was downstairs and no one was downstairs. The Plaintiff was not physically injured in any way. Although physical injury is not required for a finding of a Fourth Amendment violation, the conclusion that an officer did not violate clearly established right may be "confirmed" by the fact that "the force was not so excessive that [plaintiff] suffered hurt or injury," *Saucier v. Katz,* 533 U.S. 194, 209 (2001)(Overruled on other grounds).

The testimony elicited at trial does not establish liability as to either Officer in this case. This was a high risk search warrant involving drugs, guns and paranoid behavior. The Supreme Court has unequivocally recognized, even in cases involving far less known risks, the necessity of quick and decisive action by law enforcement in these situations:

> Although no special danger to the police is suggested by the evidence in this record, the execution of a warrant to search for narcotics is the kind of transaction that may give rise to sudden violence or frantic efforts to conceal or destroy evidence. The risk of harm to both the police and the occupants is minimized if the officers routinely exercise unquestioned command of the situation.

*Michigan v. Summers*, 452 U.S. 692, 702-703 (1981). The officers in this case acted pursuant to the authority of a search warrant and reasonably in light of the totality of the circumstances.

After an exhaustive search neither the Plaintiff nor the Defendants have been able to find any relevant precedence in the Tenth Circuit, the majority of the Circuits or the United States Supreme Court on this issue. There is however a Third Circuit case that sets forth the appropriate analysis under similar circumstances. In *Mellott v. Heemer*, 161 F.3d 117 (3rd Cir. 1998), the Court found that the Officers were entitled to qualified immunity after allegedly using the Plaintiff as a "human shield" to enter a residence. Although the Court found, under the circumstances of that case that there was no seizure, the Court went on to state, "[m]oreover, even if a reasonable fact finder could conclude that Wright was in fact seized, the defendants would still be entitled to summary judgment based on qualified immunity. A reasonable officer in the position of the marshals could easily have thought that a reasonable person in Wright's position-having asked to accompany them, having never expressed a desire to depart or to stay outside the house, and having never been told that he was not free to do so-would not feel that his liberty was restrained." *Id.*

In *Mellott* the Plaintiff asserted that although he voluntarily drove to the residence, he was then told by the marshals that he "was going through the door first ahead of them and that he was told, "if anything goes wrong…you're going to be the first one to go down." The Plaintiff also testified that as they were heading to the house he felt a gun in his back. The facts of the *Mellott* case are similar but arguably more extreme than the circumstances in this case. As the Third Circuit found, the Officers in this case are clearly entitled to qualified immunity.

## *CONCLUSION*

Sgt Chretien and Sgt. Eckerdt are entitled to qualified immunity and Judgment as a Matter of Law based on the Jury verdict in this case.  The circumstance at issue arose as an unintended consequence of otherwise sanctioned conduct by the Officers.  The Officers are entitled to qualified immunity since a reasonable officer in that situation would not have realized that his actions violated the Constitution.  In fact, the Third Circuit in addressing a similar but more extreme situation found that the Officers were entitled to qualified immunity.

WHEREFORE, Sgt. Chretien and Sgt. Eckerdt hereby request the Court enter Judgment as a Matter of Law and grant them qualified immunity, or in the alternative, request a new trial on the issue set forth above.

DATED this 22nd day of March, 2011.

/s/
Misha Westby – WSB No. 6-2826
Senior Assistant Attorney General

and

/s/
Cathleen D. Parker –WSB No. 6-3236
Senior Assistant Attorney General

## CERTIFICATE OF SERVICE

I hereby certify that on this 22nd day of March, 2011, the foregoing was filed and served via the CM/ECF upon the following individuals:

| | |
|---|---|
| Jeffrey C. Gosman | Tom Thompson |
| Gosman Law Office | MacPherson, Kelly & Thompson |
| PO Box 51267 | PO Box 999 |
| Casper, WY 82601-2481 | Rawlins, WY 82301-0999 |
| E: Jeffg@gosmanlawoffices.com | E: tthompson@wyomingattorneys.net |

/s/ Lee Ann Schutt
Office of the Wyoming Attorney General