**SUBMITTED BY:**
JEFFREY C. GOSMAN
GOSMAN LAW OFFICE
PO Box 51267
Casper, WY 82601-2481
(307) 265-6715 (fax.)
(307) 265-3082 (ph.)

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| TRICIA WACHSMUTH,<br><br>         Plaintiff,<br><br>vs.<br><br>City of Powell, and in their individual capacity,<br>Tim Feathers, Chad Miner,<br>Mike Chretien, Roy Eckerdt, Dave Brown,<br>Mike Hall, Brett Lara, Matt McCaslin,<br>Alan Kent, Matt Danzer, Cody Bradley,<br>and Kirk Chapman.<br><br>         Defendants | CASE NO. **10 CV 041J** |

***PLAINTIFF'S MEMORANDUM IN SUPPORT OF THE MOTION FOR AWARD OF ATTORNEY'S FEES, EXPENSES AND EXPERT WITNESS FEES***

**Comes Now**, Plaintiff, by and through counsel Jeff Gosman of *GOSMAN LAW OFFICE* and submits his memorandum in support of the application for attorney's fees.

### *General Purpose of Fee Shifting Statute*

The civil rights statute is much like Title VII in its purpose to advance the rights of citizens through the concept of the private attorney general. The concept of the private attorney general is that of an attorney who takes up the cause of constitutional or Title VII violations in cases where a large recovery is unlikely and the amount of work necessary to vindicate the rights of the citizen and promote obedience to the law is great.

As the Congressional Committee that drafted 42 U.S.C. § 1981(a) found, the ability to enforce discrimination claims is founded upon the willingness of attorneys to take the claims which is made possible by the fee shifting provision of the statute. *Gudenkauf v. Stauffer Comm.*, 158 F.3d 1074, *1281* (CA 10 [KA] 1998).

In the instant case, the Plaintiff and her husband were growing marijuana in their basement in a rural Wyoming town. No one was injured in the actions taken by the Powell police department that night in execution of the search warrant. This case did not present an attractive case for damages. The Plaintiff and her husband had no financial resources to employ a private attorney to vindicate their rights. This case would not attract experienced counsel to assume the responsibility for its prosecution in the absence of the fee shifting provisions of the civil rights act.

Those rights were deserving of vindication. Police officers, who had little experience doing what they did, amassed an overwhelming force, did not give the homeowner the time it would have taken to come to the door before breaching it with a six man entry team,

deposited a flashbang through the window of the master bedroom without looking inside the window, and used the Plaintiff as a human shield to clear the basement. Neither the Plaintiff nor her husband had any prior criminal convictions or history of violence. These actions clearly implicate the Fourth Amendment proscription against excessive force in the execution of a search warrant, and if left unchallenged, could become a standard over time for use of SWAT teams. This degrading of professional responsibility toward the public should not be countenanced in our society. To do so would lead to further deterioration of important constitutional protections.

## I.    PLAINTIFF AS PREVAILING PARTY

On March 4, 20111, the jury returned the special verdict form finding against the Defendants' Chretien and Eckerdt for excessive force in using the Plaintiff as a human shield. The Plaintiff was awarded $30,001.00. The jury responded to the special interrogatories by finding that Kent and McCaslin did not safely deploy the flashbang device. The Plaintiff prevailed on one of her primary theories of liability, that the officers used the Plaintiff as a human shield. On March 7, 2011, the Court entered judgment on the jury's verdict, and while post trial motions for new trial and judgment notwithstanding the verdict were filed by both parties, they have been denied.

## II.   ENTITLEMENT TO FEES AS PREVAILING PARTY

A. ENTITLEMENT AS GENERAL PROPOSITION

The "primary principle" to be applied by the trial court is that a "prevailing plaintiff should ordinarily recover attorneys' fees unless special circumstances would render such an award unjust." *Roe v. Cheyenne Mountain Conference Resort, Inc.*, 124 F.3d

1221, 1232 (CA 10 1997), quoting ***Hensley v. Eckerhart***, 461 US. 424,429, 103 S.Ct. 1933, 1937, 76 L.Ed.2d 40 (1983); ***Albemarle Paper Co. v. Moody***, 422U.S. 405,95 S.Ct. 2362,45 L.Ed.2d280 ( 1975); ***Christianburg Garment Co. v. EEOC***, 434U.S. 412,417,98 S.Ct. 694,54L.Ed.2d648 (1978); *and* ***Metzv. Merrill Lynch, Pierce, Fenner & Smith, Inc.***, 39 F.3d 1482,1492 (CA 10 1994). Fee awards are not merely permissive and the discretion of the trial court to deny a fee award is "narrow." ***New York Gaslight Club v. Carey***, 447 US. 54, 100 S.Ct. 2024, 64 L.Ed.2d 723 (1980).

When applying for an award of attorneys' fees, the Plaintiff has the burden to "prove and establish [the] reasonableness of each dollar, each hour, above zero." ***Mallinson-Montague v. Pocrnick***, 224 F.3d 1224 (CA 10 2001), citing ***Jane L. v. Bangerter***, *61 F.3d 1505, 1510 (CA 10 1995)*. When evaluating a petition for fees, the trial court should approach its reasonableness inquiry "much as a senior partner in a private law firm would review the reports of subordinate attorneys when billing clients ..." ***Robinson v. City of Edmond***, 160 F.3d 1275 (CA 10 1998), citing ***Ramos v. Lamm***, 713 F.2d 546,555 (CA 10 1983).

B. **FACTORS TO CONSIDER**

In ***Ramos v. Lamm***, 713 F.2d at 546,553 (CA 10 1983), the court suggested that among the factors to be considered were (1) whether the tasks being billed "would normally be billed to a paying client," (2) "the number of hours spent on each task," (3) "the complexity of the case," (4) "the number of reasonable strategies pursued," (5) "the responses necessitated by the maneuvering of the other side," and (6) "potential

duplication of services" by multiple lawyers.

The Plaintiff's services in this case required a two pronged approach to the law and the facts. Official capacity liability does not enjoy the protection of qualified immunity. However, official capacity liability for a single act requires running a legal gauntlet that includes establishing that the underlying act was unconstitutional, and that the final decision maker of the municipality participated in the act in such a way that the act became his act.

Individual liability under the civil rights act requires proof that the actions complained of violated the requirements of the constitution and that those rights were clearly established at the time they were violated. In the case of individual defendants, the law requires a particularized analysis to show the Court that the officers would have known the specific actions they were taking were violative of the constitution. *Anderson v. Creighton*, 107 S.Ct. 3034, *3039* (U.S. [CA 8] 1987).

These requirements became the premise for the Plaintiff's complaint, which involved thorough pre-filing research into the specific areas of alleged constitutional violation and the creation of an extensive library of cases that canvassed each area of the law. Plaintiff's counsel created a library of over 100 cases that were downloaded and annotated before the filing of the complaint. These cases are still in Plaintiff's counsel's electronic library. They consist of relevant Supreme Court, Tenth Circuit and other Circuit filings that cover the following areas: 1) excessive force claims generally; 2) use of flashbang devices; 3) analysis of the Heck Doctrine to ensure that Plaintiff's constitutional claims were not waived; 4) proper use of informants; 5) knock and announce rules: 6) officer liability for

standing by; 7) official capacity suits; 8) use of weapons during a search; 9) punitive damages; 10) qualified immunity; 11) seizure under the 4th amendment; 12) supervisory liability; 13) and SWAT entries. These cases were digested prior to filing the Plaintiff's complaint.

Once the complaint was filed there was extensive discovery. The Plaintiff filed five separate discovery requests. Each of the Defendants had to be deposed to learn the extent of involvement of each, and their knowledge of the operation generally. Thousands of documents were forwarded in discovery requiring substantial time to examine the training records of each officer to determine his qualifications to participate in the SWAT style entry into the home. An exhibit notebook consisting of over fifty depositions exhibits was prepared for the depositions. Plaintiff's counsel prepared extensive question lists based on a page by page review of the reports filed in the case, the training records and the expert's report for each Defendant. There were over two full weeks of depositions of the parties, and their experts. The Plaintiff bolstered his library of cases, which were annotated for the relevant holdings.

The summary judgment process involved motions filed by the official capacity Defendants and the individual Defendants. Plaintiff was granted a page extension and filed a 43 page response containing over 100 references to the record. There were 22 appendices filed with the response, and four declarations.

The decision of the Court was read to the parties on the 14th of January, 2011 and the Plaintiff was at that time notified that an interlocutory appeal would not be taken.

Plaintiff had one month to prepare the case for trial that would involve introduction of the testimony of the principal Defendants in Plaintiff's case in chief, a police practices expert, medical testimony, the Plaintiff's testimony and as well as defending a police practices expert and the taking of a five hour trial deposition of the Defendants' medical expert. The use of the Defendants in the case in chief required extensive preparation and familiarity with the depositions. Deposition excerpts were extracted and embedded in the witness question lists. This process required reading and bookmarking each deposition, preparing the question list, and then extracting the deposition excerpts. The parties each submitted over fifty jury instructions, and the verdict form was complex. The trial lasted twelve trial days. The jury deliberated for parts of three days, and there were numerous jury notes submitted to the Court.

"It goes without saying that if a court's compensation is not adequate to match what the market will bear for a lawyer's services, then competent lawyers will go elsewhere to offer their services. Such a result would do irreparable damage to our system of private enforcement of federal civil rights." ***Robinson v. City of Edmond***, 160 F.3d 1275 (CA 10 1998).

## III.    GENERAL COMPUTATION OF THE FEE

### A. THE *JOHNSON* FACTORS

The Tenth Circuit, as with nearly all other Circuits, begins an analysis of a "reasonable" fee by computing what is known as the "lodestar" amount. Simply put, one multiplies the total number of hours expended, by a reasonable hourly rate of pay, to

compute the lodestar sum to which the prevailing Plaintiff is entitled. Once that figure has been computed, then the Court may take into account other factors which may cause the lodestar sum to rise or fall. These factors were first announced in *Johnson v. GeorgiaHighway Express, Inc.*, 488 F.2d 714 (CA 5 1974), and they are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal services properly; (4) the preclusion of other employment by the attorney due to the acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Lex K. Larson*, *Employment Discrimination*, *2nd Edition § 97.1 1 (1996)*.

The Tenth Circuit has consistently utilized the *Johnson* factors, although not without an occasional adjustment to fit a specific circumstance in a given case. *Sears v. Atchison, Topeka & Santa Fe Ry.*, 749 F.2d 145 1 (CA 10 1984) *cert. denied*, citations omitted; *Salone v. United States*, 645 F.2d 875 (CA 10 1981) *cert denied*, citations omitted. While the *Johnson* factors are used to increase, or occasionally decrease, a fee award, it is now universally accepted that the lodestar fee is presumptively reasonable. *Blum v. Stenson*, 465 U.S. 886,104 S.Ct. 1541, 79L.Ed.2d891(1984).

The Plaintiff's counsel has attached the affidavit of Tom Valdez of Chapman Valdez

who is an experienced trial attorney with extensive background in Title VII and Civil Rights Cases. Mr. Valdez has testified that both the rate charged by Plaintiff's counsel and the fee were reasonable.

## B. THE HOURS AND THE FEE

For the Plaintiff, every witness and litigation issue from the filing of the complaint through the verdict was the sole responsibility of one attorney. The Attorney General's office had several attorneys and the official capacity defendants were represented by Tom Thompson. The case was contentious and there were numerous non-dispositive motions filed during the course of the litigation. Plaintiff's counsel was required to devote most of his practice for over one year to this case.

## C. VOLUNTARY REDUCTION BY PLAINTIFF

The prevailing party must make a "good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." **Jane L. v. Bangerter**, 61 F.3d at 1510. In this case, Plaintiff has made that good-faith effort by eliminating the following hours from her attorneys' fees Petition:

1. Plaintiff removed all fees associated with the research and presentation of the argument for the pointing of weapons at the officers.

2. Plaintiff removed all fees associated with the preparation of the rebuttal witness designation and the response to the motion in limine on that issue, and has not included the fees of Dr. Brockman in the application.

3. The Plaintiff removed all hours associated with the preparation of the notice of claim filed with the City of Powell under the Wyoming Governmental Tort Claims Act.

IV. **ANTICIPATED ARGUMENT FROM THE INDIVIDUAL DEFENDANTS: PLAINTIFF'S 'PARTIAL SUCCESS'.**

To the extent that Defendant may suggest that Plaintiffs recovery of attorney fees and costs should be reduced based upon perceived "partial success," Plaintiff believes the authorities would not define her verdict as "partial success." Without question, a trial court has the authority to reduce the overall lodestar attorneys' fees based upon limited or partial success by the prevailing party. **Jane L. v. Bangerter**, 61 F.3d at 1510; ***Flitton v. Primary Residential Mortgage, Inc.***, 614 F.3d 1173, ***1177*** (CA 10 2010).

However, this case involved a common set of facts, common witnesses to the legal theories presented, and a common set of events which were virtually inseparable. The Supreme Court stated in *Hensley* that many civil rights suits involve more than one claim being based on "a common core of facts or ... related legal theories." *Hensley* at 435. The Tenth Circuit has held that it is "inappropriate for a district court to evaluate the individual claims as though they were discrete and severable." ***Robinson v. City of Edmond***, 160 F.3d at 1281. The Tenth Circuit used *Hensley* to reverse a trial court's reduction of claimed attorneys' fees for a woman who won her claim for violation of the Equal Pay Act but lost her Title VII claim. In ***Tidwell v. Fort Howard Corp***., *989* F.2d 406, ***412-13*** (CA 10 1993), the court held that the common core of facts for the Title VII claim was part and parcel of "one bundle of proof' inseparable from the proof on the EPA count, and

therefore the plaintiffs attorney was "entitled to be fully compensated."

In *Flitton v. Primary Residential Mortgage, Inc.*, 614 F.3d at 1177, the Tenth Circuit in 2010 held that fees were properly awarded for a second jury trial on the issues of discrimination and punitive damages even though a complete defense verdict was granted in the second trial. This holding was founded upon the interrelationship between the discrimination claims and the retaliation claims. The fee request was granted even though the Plaintiff's success had come in an earlier trial, and the retaliation claim involved elements that were substantially different from the elements of the discrimination claim.

IV.    **ENTITLEMENT TO TAXABLE COSTS PURSUANT TO F.RC.P. 54**

As prevailing party for purposes of liability and for attorneys' fees, Tricia Wachsmuth is the prevailing party for purposes of taxable costs under F.R.C.P. 54(d)(l). *Barber v. T.D. Williamson, Inc.,* 254 F.3d 1223 (10" Cir. 2001); *See,* 10 *Moore's Federal Practice* Section 54.101[3] (3d. Ed.2000) (noting that the "prevailing party" requirement for purposes of costs is generally, but not completely, synonymous with the "prevailing party': requirement in the attorneys' fee context); *Wright &Miller, Federal Practice &Procedure,* Section 2667. It is worth noting that in *Barber,* the plaintiff was held to be the prevailing party for purposes of fees and costs, in spite of having attained a verdict for nominal damages. The Tenth Circuit cited *Tunison* v. *Continental Airlines Corp., Inc.,* 162 F.3d 1187, 1189-90 (D.C. Cir. 1998) which held that "the 'prevailing party' determination is generally the same in the two contexts" - i.e., Rule 54(d)(l)

and 42 U.S.C. Section 1988. Plaintiff will submit her Bill of Taxable Costs as required by the Federal and Local Rules and per the Court's Order Granting Extension to file the petition for attorney's fees and costs.

V.  **ENTITLEMENT TO NON-TAXABLE LITIGATION EXPENSES**

In addition to taxable costs recoverable under F.R.C.P. 54, the prevailing party may recover other out-of-pocket expenses incurred during litigation of a civil rights case if: 1) the expenses are not absorbed as part of law firm overhead and normally billed to the firm's private clients, and 2) the expenses are reasonable. *Bee* v. *Graves,* 910 F.2d 686, 690 (10" Cir. 1990), *Jane* L. v *Bangerter, supra;* and 42 U.S.C. Sec. 2000e-5(k). In *Bee,* the Tenth Circuit held that the "categorization of the items is not dispositive of their recoverability." *Bee* at 690. Expenses which may not be recoverable as costs under F.R.C.P. 54 are nevertheless part of the costs which are awardable under civil rights attorneys fees' statutes. *Cadena* v. *Pacesetter Corporation,* 30 F. Supp. 2d 1333 (D. Kan. 1999), aff'd. 224 F.3d 1203 (CA 10 2000). *See also, Dailey* v. *Societe Generale,* 915 F.Supp. 1315 (F.D.N.Y. 1996) (aff'd in part and vacated on other grounds), 108 F.3d 451 (CA 2 1997). The trial court has to examine each billed expense to ascertain whether it meets the two-part standard for being recovered - whether it is usually billed to a firm's private clients and whether it is a reasonable charge for the case at hand.

In *Cadena,* non-taxable witness fees and expenses; and deposition expenses which

would have been recoverable as taxable costs in any event, were all recoverable as litigation expenses under the applicable civil rights attorneys fees' statute. *(See, also, Moutray v. Groendyke Transport*,75 FEP 898 (D. Kan. 1997)(actual use of depositions not necessary to recover costs of depositions used in case).  In this case, Plaintiffs counsel has provided an itemized statement of non-taxable litigation expenses showing expenses normally billed to his clients including the costs of copying over one thousand pages for the appendix to the summary judgment and the cost of preparing five witness notebooks as required by the Court's final pre-trial order and the preparation of two additional notebooks for counsel and opposing counsel, the deposition expenses (those which will not appear on Plaintiffs Bill of Taxable Costs) for Defendants and other witnesses which were not used at trial, and the costs of travel and hotel expenses for taking depositions and for the trial of the matter.  All of these expenses relate directly to Plaintiffs prosecution of her claims against Defendants.  Therefore, Plaintiff asks the Court to award these litigation expenses to her as both ordinary and reasonable nontaxable expenses to which her attorneys are entitled pursuant to 42 U.S.C. Sec. 1988(b).

VI.     **AWARD OF NON-TAXABLE EXPERT WITNESS FEES**

Pursuant to *42 U.S.C. 1988(c)* the prevailing party may also be entitled to expert witness fees.  Plaintiff called D.P. VanBlaricom as an expert witness in police practices.  He was permitted to testify.  He charged Plaintiff for two full days for his trial testimony, for which Plaintiff paid $7,803.00.  He also charged Plaintiff $3,527.00 for preparation of this

report and preparation for his deposition. This witness provided important testimony to the case, and countered the expected expert testimony of Thor Eells whom the Defendants' called to testify in their behalf. Plaintiff seeks recovery of these costs.

VII. **ENTITLEMENT TO FEES AND EXPENSES DEVOTED TO INSTANT APPLICATION AND OTHER POST-TRIAL MOTIONS**

Case law is clear that a prevailing party is entitled to recover attorneys' fees and expenses incurred for litigating fees issues and arguing or defending against post-trial motions. *Mares v. Credit Bureau of Raton*, 801 F.2d 1197 (CA 10 1986); *Glass v. Pfeffer*, 849 F.2d 1261, 1266 n. 3 (CA 10 1988); and *Hernandez v. George*, 793 F.2d 264,269 (CA 10 1986). *See also Weyant v. Okst*, 198 F.3d 311 (CA 2 1999); *Bagby v. Beal*, 606 F.2d 41 1 (CA 3 1979); *Cruz v. Hauck*, 762 F.2d 1230 (CA 5 1985); *Weisenberger v. Huecker*, 593 F.2d 49 (CA 6 1979); and *Jonas v. Stack*, 758 F.2d 567 (CA1 1985). *See, also, Larson*, **Title VII, Remedies**, Section 97.12 (2) at pp. 97-74-75. For case law regarding post-trial motions and fees incurred, *see Nahmod Civil Rights and Civil Liberties Litigation, the Law of Section 1983* at Section 10:48 and supplements thereto, 2010.

VIII. **INTEREST ON COURT'S FINAL JUDGMENT ORDER**

In addition to requesting an award of attorneys' fees, taxable costs and non-taxable litigation expenses, Plaintiff asks the Court to award post-judgment interest at the statutoryrate allowed by law. *See, Carr v. The Fort Morgan School District*, supra.

IX.   **CONCLUSION**

Based upon the above and foregoing, Plaintiff asks the court to award her the sum of her attorney's fees as set out in the application together with non-taxable costs that are incidental to the litigation.

Friday, April 8, 2011.

Respectfully submitted,

_____-S-_____
JEFFREY C. GOSMAN
Plaintiff's Counsel
**GOSMAN LAW OFFICE**
PO Box 51267
Casper, Wyoming 82601
(307) 265-3082 (ph.)
(307) 265-6715 (fax.)

### *Certificate of Service*

I hereby certify that true and correct copies of the foregoing document was served this Friday, April 8, 2011 by *e-submission* to the following parties in interest:

| | |
|---|---|
| Misha Westby<br>Senior Assistant Attorney General<br>2424 Pioneer Avenue, 2nd Floor<br>Cheyenne, WY 82002<br>         (307) 777-5477<br>         (307) 777 8920 (f)<br>mwest@state.wy.us | |

_____-S-_____
Jeff Gosman